Nicolas RODRIGUEZ–LARIZ;
Maria De Jesus Guevara–
Martinez, Petitioners,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 01–70006.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 5, 2001

Filed March 13, 2002.

Victor D. Nieblas Pradis, Los Angeles, CA, for the petitioners.

Heather R. Phillips, Civil Division. U.S. Department of Justice, Washington, DC, for the respondent.

Before: PREGERSON, TASHIMA, and BERZON, Circuit Judges.

TASHIMA, Circuit Judge.

Petitioners Nicolas Rodriguez–Lariz and Maria de Jesus Guevara–Martinez were granted voluntary departure to Mexico after their legal representatives failed timely to file applications for suspension of deportation under § 244 of the Immigration and Naturalization Act ("INA"). Petitioners' appeal was dismissed by the Board of Immigration Appeals ("BIA"), and their subsequent motion for reconsideration was denied. Petitioners then filed a motion to reopen their deportation proceedings, arguing that they were prevented from timely filing their applications for suspension of deportation due to ineffective assistance of counsel and that exceptional circumstances warranted reopening their case. The BIA denied this motion and petitioners timely petition for review. We grant the petition and reverse the BIA.

## I. BACKGROUND

Petitioners are Mexican nationals who entered the United States in 1988 and have lived here continuously since that time. Petitioners are married with two citizen-children, Nico and Janet.

In their motion to reopen filed with the BIA, petitioners made a series of factual allegations that form the basis of this appeal. The government does not directly dispute these allegations, which are set forth below.

Petitioners allege that in an attempt to legalize their immigration status in the United States, they originally contacted Oscar Torres, who had been recommended to them as an immigration specialist. Torres, who could only be contacted by phone, indicated that petitioners had a promising case and agreed to help them secure legal resident status. After petitioners paid Torres $600, he filed an application for asylum, which was denied at the administrative level.

On July 3, 1996, petitioners were served with an Order to Show Cause and Notice of Hearing alleging that they were subject to deportation for entry without inspection under § 241(a)(1)(B) of the INA, and setting an immigration court hearing on September 5, 1996. On that date, petitioners met Torres at the immigration court and paid him another $600. At that time, Torres introduced petitioners to Jorge Cabrera, an attorney who Torres had arranged to represent them in front of the Immigration Judge ("IJ").

During the hearing, Cabrera told the IJ that respondents (petitioners here) conceded deportability and moved the court to grant suspension of deportation or, in the alternative, voluntary departure. Cabrera withdrew petitioners' asylum application. When asked by the IJ if he agreed to withdraw his asylum application and instead pursue suspension of deportation, petitioner Rodriguez assented to that course of action. The IJ then adjourned the hearing until March 5, 1997, and instructed petitioners to file their application for suspension of deportation by February 15, 1997. The IJ concluded by stating that "if these applications are not submitted on or before that date, I shall consider the [petitioners] have waived their opportunity, under 8 C.F.R. 3.31c, to file such applications and I will only consider what other relief would be available to them at the time that we meet."

According to petitioners, after the hearing, Torres gave them a list of the documents that he needed to complete their applications. On September 30, 1996, Torres retrieved the documents from the petitioners, advising them "just to wait for the next hearing and he would be in charge of everything else." Rodriguez subsequently made several calls to Torres, who told him that "everything was fine" and that he and the attorney "were handling everything." Petitioners' applications for suspension of deportation were filed on February 21, 1997, which was after the filing deadline set by the IJ.

On March 5, 1997, Rodriguez met Torres at the immigration court and paid him $700 for the day's representation. Although petitioners expected to be represented by Cabrera again, he never arrived. Instead, immediately before the hearing, Torres introduced petitioners to Stephen Alexander, who was to represent them during the day's proceedings.

At the hearing, the IJ indicated that the application for suspension of deportation had not been filed with the court. This was the first indication petitioners had that their applications might not have been filed. The court went into recess during which petitioners assert that Alexander stated that he had no idea what had happened to the applications and the best he could do was to agree to voluntary departure. When the hearing resumed, petitioners agreed to depart voluntarily and the IJ granted them a six-month voluntary departure period. In his decision, the IJ stated that since the applications for suspension for deportation had not been timely filed, petitioners had waived their eligibility for such discretionary relief.

After the hearing, petitioners met with Alexander and Torres, who assured petitioners that the applications had been filed, but claimed that the IJ lost them. Torres left to investigate what had happened and later showed up at petitioners' home, stating that the IJ had indeed lost the applications. Torres told petitioners that "an appeal would resolve all the problems" and charged them $350 to pursue the appeal. A notice of appeal was filed on March 31, 1997, which contained Rodriguez's signature. The notice of appeal stated that the IJ had erred in denying petitioners' applications for suspension of deportation.

Rodriguez paid Torres an additional $1,200 to file his appellate brief to the BIA.[1] The brief, filed on February 11, 1998, argued that the IJ erred in denying petitioners' applications for suspension of deportation by ignoring substantial evidence of their eligibility for such relief. In particular, petitioners contended that they would suffer extreme hardship if deported since they were "americanized," did not know "the social atmosphere and employment system of Mexico," did not know anybody in Mexico that could help them, had American children who would encounter problems with the Mexican immigration authorities, and would generally suffer "extreme emotional, financial and physical hardship."

On November 23, 1998, the BIA dismissed petitioners' appeal. The BIA focused on petitioners' failure timely to file their suspension applications and noted that petitioners had "offered no explanation to the Immigration Judge for the late submission, and on appeal did not address their tardiness." The BIA stated that "[w]e find no merit in the [petitioners'] contention that the Immigration Judge should have considered their applications anyway because they eventually filed them. Accordingly, the [petitioners'] appeal is dismissed and their motion is denied." The BIA gave petitioners 30 days to voluntarily depart the country.

On December 23, 1998, Rodriguez filed a *pro se* motion for reconsideration, which he claims was prepared by Torres. The motion essentially repeated the substance of petitioners' previous appeal. The BIA denied this motion on June 13, 2000, concluding that petitioners had not identified any legal or factual error in the previous decision.

On July 10, 2000, petitioners, represented by current counsel, filed the instant successive motion to reopen, arguing that they were prevented from timely filing their suspension applications due to the ineffective assistance of counsel and that exceptional circumstances existed that warranted reconsideration. On December 4, 2000, the BIA denied this motion and this petition for review followed.

## II. STANDARD OF REVIEW

▆▆▆▆ This Court reviews the BIA's ruling on a motion to reopen for an abuse of discretion. *Shaar v. INS,* 141 F.3d 953, 955 (9th Cir.1998). Questions of law are reviewed de novo, *Lopez v. INS,* 184 F.3d 1097, 1099 (9th Cir.1999), as are claims of due process violations in deportation proceedings, *Castillo–Perez v. INS,* 212 F.3d 518, 523 (9th Cir.2000).

## III. JURISDICTION

▆▆▆▆ We must first decide whether we have jurisdiction to review the BIA's denial of petitioners' successive motion to reopen. The transitional rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996), *as amended by* the Extension of Stay in United States for Nurses Act, Pub.L. No. 104–302, 110 Stat. 3656(Oct. 11, 1996), apply to this appeal, since deportation proceedings began in this case before April 1, 1997 (July 3, 1996) and a final order of deportation was entered after October 30, 1996 (March 5, 1997). *See Kalaw v. INS,* 133 F.3d 1147, 1150 (9th Cir.1997) (stating that deportation and exclusion proceedings 4136 pending before IIRIRA's April 1, 1997 effective date are governed by special "transitional changes in judicial

---

1. After the appellate brief was filed, petitioners claim that Immigration and Naturalization Service ("INS") agents came to deport them. Petitioners also allege that at some later point they paid Torres $450 to block deportation.

review" that apply to final orders of deportation or exclusion entered after October 30, 1996). Under § 309(c) of IIRIRA, this Court has jurisdiction to review a BIA decision under pre-IIRIRA § 106(a) of the INA, 8 U.S.C. § 1105a(a), unless a specified exception applies. One of the specified exceptions precludes judicial review of "any discretionary decision under section ... 244 of the [INA]...." IIRIRA § 309(c)(4)(E).

■ Under IIRIRA's transitional rules, we have jurisdiction to review the BIA's denial of a motion to reopen when a petitioner is ordered deported under § 241 of the INA. *See Arrozal v. INS,* 159 F.3d 429, 432 (9th Cir.1998); *see also Socop–Gonzalez v. INS,* 272 F.3d 1176, 1183 (9th Cir. 2001) (en banc). This is true even when a petitioner moves to reopen in order to seek suspension of deportation under INA § 244. *Arrozal,* 159 F.3d at 432. The review of a motion to reopen in this context is distinct from the direct review of a denial of suspension of deportation, which is precluded when the BIA makes discretionary determinations of the threshold eligibility requirements of "extreme hardship" and "good moral character" under § 244(a). *See Kalaw,* 133 F.3d at 1152.

The initial jurisdictional issue is whether *Arrozal* applies to permit this court to review the BIA's order denying petitioners' motion. In this case, the underlying deportation order consisted of the IJ's grant of petitioners' request for voluntary departure in lieu of deportation. *See Foti v. INS,* 375 U.S. 217, 229, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963); *Contreras–Aragon v. INS,* 852 F.2d 1088, 1092 (9th Cir.1988). The pre-IIRIRA version of § 244 provides that "the Attorney General may, in his discretion, permit any alien under deportation proceedings ... to depart voluntarily

from the United States at his own expense in lieu of deportation...." 8 U.S.C. § 1254(e)(1). Although the IJ's order was issued under INA § 244, rather than the deportation provisions of § 241, we nevertheless conclude that *Arrozal* applies to petitioners' case because the grounds for deportability—which form the underlying basis for the grant of voluntary departure—arose under § 241(a)(1)(B). The jurisdictional bar of IIRIRA § 309(c)(4)(E), therefore, does not apply to this case. We thus have jurisdiction to review the merits of the BIA's decision not to reopen.[2]

## IV. ANALYSIS

### A. Equitable Tolling

■ Petitioners argue that the BIA abused its discretion in determining that it lacked jurisdiction over their successive motion to reopen. The INS regulation applicable to motions to reopen deportation proceedings provides as follows:

> [A] party may file only one motion to reopen deportation or exclusion proceedings (whether before the Board or the Immigration Judge) and that motion must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened, or on or before September 30, 1996, whichever is later.

8 C.F.R. § 3.2(c)(2).

As set forth above, petitioners, at Torres' suggestion, filed a *pro se* motion for reconsideration, prepared by Torres, of the BIA's denial of their appeal. Once this motion was denied, petitioners retained new counsel and filed the instant motion to reopen. This second motion exceeded the

---

2. We also have jurisdiction to hear petitioners' due process claims. *Antonio–Cruz v. INS,* 147 F.3d 1129, 1130 (9th Cir.1998) (holding that § 309(c)(4)(E) of IIRIRA does not deprive this Court of jurisdiction to hear due process challenges to immigration decisions).

numerical limit imposed by § 3.2(c)(2) on motions to reopen.

■ The numerical limit on motions to reopen, however, may be waived (or tolled) in cases where a petitioner has been defrauded by an individual purporting to provide legal representation. *Varela v. INS,* 204 F.3d 1237, 1240 (9th Cir.2000) (holding that "[t]he rationale underlying equitable tolling of the statute of limitation also justifies waiving § 3.2(c)(2)'s numerical limitation on motions to reopen in cases of fraud"); *see also Lopez,* 184 F.3d at 1100("We conclude that the statute of limitations to reopen an order of deportation is equitably tolled where the alien's late petition is the result of the deceptive actions by a notary posing as an attorney."); *Socop–Gonzalez,* 272 F.3d at 1187–93 (affirming the vitality of *Varela* and *Lopez* ). That is the case here. Petitioners believed the representations by Torres that he was coordinating legal services for them and that filing the motion to reconsider the BIA's initial decision he prepared would be in their best interests. That motion, however, which restated the precise arguments rejected on appeal, was denied by the BIA, which noted that petitioners had "not identified any error in our prior decision...." Therefore, as in *Varela,* Torres wasted petitioners' one opportunity to reopen their case and apply for suspension of deportation by filing a worthless motion for reconsideration.

The BIA, however, concluded that an equitable waiver was not available to petitioners, since they should have discovered their counsel's fraudulent actions prior to the motion to reopen stage.

We find that even if the [petitioners] were not fully aware of the ineffective assistance of their counsel because of his lies, they clearly relate that they had numerous reasons to doubt his representations at each phase of the proceedings. The claim of ineffective assistance of counsel was not raised on appeal or in the motion for reconsideration. Any fraud on the part of their former counsel was discoverable during these periods. While the respondents are correct that this Board may act *sua sponte* to reconsider a decision or reopen proceedings pursuant to 8 C.F.R. § 3.2(a), we construe the respondents' motion requesting our action *sua sponte* to be a second motion for reconsideration and reopening. As the motion exceeds the numerical limitation for such motions, we have no jurisdiction to consider it.

The INS argues that the BIA's conclusions regarding the unavailability of an equitable tolling or waiver should be upheld for two reasons. First, it contends that there was no fraudulent activity on the part of petitioners' legal representatives, as required by *Varela* and *Lopez.* Specifically, it asserts that the activity engaged in by Torres and his associates, such as fee-splitting and failing timely to file petitioners' applications, while perhaps unethical or improper, did not defraud petitioners in any way.

We reject this is overly narrow and crabbed reading of this Court's precedent. Although it is certainly true that the *Varela* court held that an equitable waiver is justified "in cases of fraud," we specifically stated that the individual purporting to provide legal representation in that case engaged in fraud by "filing ... a worthless motion to reopen." *Varela,* 204 F.3d at 1240. Moreover, the "fraudulent legal representation" described in *Lopez* included the filing of the wrong type of petition and the failure to appear at hearings. *Lopez,* 184 F.3d at 1100. *Varela* and *Lopez* are therefore indistinguishable from the facts of this case. Here, Torres, who was not an attorney, missed the deadline for filing the application for suspension of deportation and then lied about having done so, assuring petitioners that it was the IJ

that had lost the application and that the IJ's error could be rectified on appeal. Torres then compounded his mistakes and misrepresentations by advising the filing of a motion for reconsideration that prejudiced petitioners' claims. Torres' actions constitute the type of fraudulent representation that triggers equitable tolling under *Varela* and *Lopez.*

The INS' second argument against equitable tolling is that, even if fraud existed, petitioners failed to act with the reasonable diligence necessary to preserve their claim. *See Jobe v. INS,* 238 F.3d 96, 101 (1st Cir.2001) (finding that petitioner was insufficiently diligent in pursuing his asylum application and therefore was not entitled to equitable tolling, where he knew that the IJ had ruled on his application but failed to take action to protect his rights for over six months). In support of this argument, the INS—echoing the BIA—contends that petitioners failed to act on clear signals that they were receiving fraudulent representation. In particular, the INS asserts that petitioners should have known they were being defrauded based on the following signs: (1) Torres did not have an office; (2) Torres originally advised petitioners to file an asylum application, against Rodriguez's better judgment; (3) Cabrera never contacted petitioners about their case; (4) when petitioners showed up for their deportation hearing, they were told for the first time that Alexander was going to represent

them; (5) Alexander knew nothing about their case; (6) during the hearing, Alexander requested voluntary departure, although Rodriguez was not in agreement with that course of action; (7) after their appeal was filed, the INS came to petitioners' home to deport them; and (8) petitioners were promptly notified that the BIA had issued an unfavorable ruling on their appeal.

Rather than showing lack of diligence, however, these facts demonstrate that petitioners were taken advantage of by an unscrupulous immigration consultant who persuaded petitioners to pay relatively large sums of money in exchange for faulty and ineffective representation and lied to them about his own defaults. The INS' suggestion that petitioners, who were in an extremely vulnerable position as the subjects of pending deportation proceedings, should be considered to have lost their rights because they were beguiled by Torres' assurances, contradicts the very basis for providing equitable relief. Petitioners were unfamiliar with the INS' administrative process and relied on Torres to protect their interests. Once they received notification that their initial motion for reconsideration, which was prepared by Torres, had been denied, they promptly retained new counsel and filed a motion to reopen within one month.[3] This simply does not constitute lack of diligence.[4] We therefore conclude that the BIA abused its

---

**3.** In its ruling on the motion to reopen, the BIA suggests that the fact that petitioners did not raise their ineffective assistance of counsel claim on appeal or in their motion for reconsideration indicates that they were not diligent in ascertaining the fraud. However, petitioners did not raise an ineffective assistance of counsel claim at those times because they were still being represented by Torres and his associates. The BIA cannot expect petitioners' fraudulent counsel to have filed an ineffective assistance claim implicating their own defective conduct.

**4.** The INS' suggestion that petitioners are somehow being dishonest about their lack of legal sophistication because they were able to obtain social security cards for their children and file their taxes are completely off the mark. It is utterly plausible that an immigrant would know how to comply with basic legal requirements, such as filing taxes, but not understand complex immigration proceedings.

discretion in determining that it had no jurisdiction to reopen petitioners' deportation proceedings.[5]

## B. Due Process Violation

On the merits of their motion to reopen, petitioners argue that their ineffective counsel deprived them of their due process rights to a fair hearing in front of the IJ. The BIA did not directly address this issue, instead treating the ineffective assistance question as part of its analysis of equitable tolling.

■ "Ineffective assistance of counsel in a deportation proceeding is a denial of due process under the Fifth Amendment if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Lopez v. INS*, 775 F.2d 1015, 1017 (9th Cir.1985). Due process challenges to deportation proceedings require a showing of prejudice to succeed. *Getachew v. INS*, 25 F.3d 841, 845 (9th Cir.1994).

There is little doubt that petitioners have sufficiently established that their due process rights were violated by their association with Torres, Cabrera, and Alexander. It is undisputed that petitioners relied on the repeated representations of Torres that he was adequately handling their case. Although petitioners provided Torres with the requisite documents to complete their suspension applications over four months prior to the filing deadline and made several calls to Torres inquiring about their case, Torres inexplicably failed to submit the applications in a timely fashion.

■ In a similar factual context, this Court determined that counsel's failure to file an application for suspension of deportation constituted a due process violation. *Castillo–Perez*, 212 F.3d at 526("The record is undisputed that [petitioner's] lawyer failed, without any reason, to timely file the application in spite of having told [petitioner] that he did file it. . . . [W]e hold that [petitioner] presented a valid claim of ineffective assistance of counsel to the BIA when it considered his motion to remand and thereby established that his due process rights were violated."). Therefore, petitioners meet the standard for ineffective assistance of counsel articulated in *Castillo–Perez*. In addition, petitioners have clearly suffered prejudice, as their counsel's failure to file their applications for suspension of deportation unquestionably affected the outcome of the proceedings. *See Ortiz v. INS*, 179 F.3d 1148, 1153 (9th Cir.1999).

■ Petitioners have also satisfied the procedural prerequisites to reopen on the basis of ineffective assistance of counsel. "To establish ineffective assistance of counsel in a motion to reopen, an alien must: 1) provide an affidavit describing in detail the agreement with counsel; 2) inform counsel of the allegations and afford counsel an opportunity to respond; and 3) report whether a complaint of ethical or legal violations has been filed with the proper authorities, and if not why not." *Lopez*, 184 F.3d at 1100(citing *Matter of Lozada*, 19 I. & N. Dec. 637, 639, 1988 WL 235454 (BIA 1988)). These "*Lozada* factors" are "intended to ensure both that an adequate factual record exists for an inef-

---

5. Petitioners argue that the BIA also abused its discretion in declining to reopen under 8 C.F.R. § 3.2(a), as "exceptional circumstances" existed warranting such an action. *See Matter of J J*, 21 I. & N. Dec. 976, 984, 1997 WL 434418 (BIA 1997) (stating that the BIA's discretionary power to reopen would only be exercised in "exceptional circumstances"). We need not separately address this argument, however, because it essentially repeats the assertions of error outlined above, repackaged under the rubric of a § 3.2 violation.

fectiveness complaint and that the complaint is a legitimate and substantial one." *Castillo–Perez*, 212 F.3d at 526. These factors are not rigidly applied, especially when the record shows a clear and obvious case of ineffective assistance. *Id.*

Here, petitioners have substantially complied with the *Lozada* factors by submitting an affidavit detailing their oral agreement with Torres and filing complaints against Torres, Cabrera, and Alexander with the State Bar of California and the local District Attorney's office. Moreover, the record itself demonstrates the legitimacy of petitioners' ineffective assistance complaint—relieving them of the need technically to comply with *Lozada*—since it is undisputed that petitioners' counsel failed timely to file their applications. *See Castillo–Perez*, 212 F.3d at 526.

The INS responds that even if it is assumed that petitioners' counsel was constitutionally ineffective, the BIA did not abuse its discretion in denying their motion to reopen because petitioners were unable to demonstrate their *prima facie* eligibility for suspension of deportation. In its decision, the BIA succinctly listed petitioners' grounds for suspension and concluded that they "do not make out a prima facie of eligibility [sic] for suspension of deportation so as to warrant the use of our power to reopen, sua sponte, these proceedings to prevent an injustice." Because petitioners would not be entitled to the underlying relief sought, the INS argues, petitioners' ineffective assistance claim is negated, thereby requiring that we uphold the BIA.

We do not agree that the BIA sufficiently treated petitioners' claim for suspension of deportation. To the contrary, the BIA merely repeated petitioners' claims and summarily dismissed them without even purporting to engage in any substantive analysis or articulating any reasons for its decision. Such a cursory recitation and generalized analysis of the equities in favor of petitioners' claim would constitute an abuse of discretion, if the claim were being reviewed on the merits. *See Arrozal*, 159 F.3d at 433; *see also Watkins v. INS*, 63 F.3d 844, 849 (9th Cir.1995) (stating that the BIA abuses its discretion when it "fails to state its reasons and show proper consideration of all factors when weighing equities and denying relief"). Moreover, despite the INS' argument to the contrary, the BIA did not give careful and individualized consideration to the hardship that petitioners' United States citizen children would suffer as a result of their deportation, as it is required to do. *See Jara–Navarrete v. INS*, 813 F.2d 1340, 1343(9th Cir.1986). We thus hold that the constitutionally ineffective assistance rendered by Torres and his associates constitutes an independent ground requiring reversal of the BIA's denial of petitioners' motion to reopen because it likely resulted in prejudice to petitioners.

## V. CONCLUSION

We conclude that the BIA's refusal to reopen petitioners' deportation proceedings was an abuse of discretion. The defective representation petitioners received equitably tolled the numerical limit on motions to reopen and constituted ineffective assistance of counsel, requiring a new hearing on the issue of suspension of deportation.

The petition for review is granted. The BIA's decision is **REVERSED** and **REMANDED** with directions to grant petitioners' motion to reopen.