Alexander **PREDTECHENSKY,**
Petitioner,

v.

**IMMIGRATION AND
NATURALIZATION SERVICE,**
Respondent.

No. 02–70434.
INS No. A71–575–962.

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 7, 2003.*
Decided March 25, 2003.

* This panel unanimously finds this case suitable for decision without oral argument. See    Fed. R.App. P. 34(a)(2).

Before BROWNING, PREGERSON, and REINHARDT, Circuit, Judges.

**MEMORANDUM***

Alexander Predtechensky petitions for review of a decision of the Board of Immigration Appeals ("BIA"), adopting and affirming a decision of an Immigration Judge ("IJ") denying Predtechensky's motion to reconsider his motion to reopen his application for asylum and withholding of deportation, which had been withdrawn. We review the decision of the IJ. *See Alaelua v. INS,* 45 F.3d 1379, 1382 (9th Cir.1995).

## I.

Predtechensky claims that the withdrawal of his application for asylum and withholding of deportation was "without informed consent" and arose from the ineffective assistance of his former counsel, Garish Sarin. Predtechensky argues that due process requires that he be permitted to pursue the application.

"Ineffective assistance of counsel in a deportation proceeding is a denial of due process under the Fifth Amendment if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case. Due process challenges to deportation proceedings require a showing of prejudice to succeed." *Rodriguez–Lariz v. INS,* 282 F.3d 1218, 1226 (9th Cir.2002) (citations and internal quotations omitted). In addition, *Matter of Lozada,* 19 I. & N. Dec. 637, 1988 WL 235454 (BIA 1988), imposes certain procedural prerequisites upon motions to reopen based on claims of ineffective assistance of counsel.

The IJ held that Predtechensky had complied with *Lozada,* but found that Predtechensky's account of the events surrounding the withdrawal of his application

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

for asylum and withholding of deportation was not credible, and that Sarin's account of those same events was credible. Having discredited Predtechensky and credited Sarin, the IJ determined that the withdrawal was "knowing and voluntary."[1]

## II. *Discrediting Predtechensky.*

■ The IJ discredited Predtechensky's account because the IJ determined that Predtechensky's motion to reopen, which claimed that Predtechensky had "no idea what was happening" when he withdrew his application, was "inconsistent with [his] conduct on March 27, 2000," when the application was withdrawn. Predtechensky describes the March 27 hearing as follows:

> Mr. Sarin ... stated to the Immigration Judge that he was requesting a continuance to pursue adjustment of status rather than advise the Judge, as we had discussed, that I wanted to pursue my asylum claim as my wife had filed for divorce. I was shocked at his statement and did not know how to react or what I should do. My wife has not yet obtained a divorce and I didn't know if it was still alright to pursue the petition she had filed. I was extremely confused and nervous. The Immigration Judge then stated that I would probably be withdrawing my asylum application on some future date. Although Mr. Sarin was not asked to withdraw my application on March 27, 2000, he did so anyway. I have no idea why. The Immigration Judge then asked me if that is what I wanted to do and I had no idea what to say. I thought Mr. Sarin knew what he was doing so I said yes. However, I realize now that he should have advised

the Immigration Judge that my wife had filed for divorce and that he never should have withdrawn my asylum application.

This account explains how and why Predtechensky mistakenly acquiesced in the withdrawal of his application. Contrary to the IJ's assessment, this account is entirely consistent with Predtechensky's conduct, as described in the IJ's decision. Furthermore, the IJ did not even identify whatever it was that she found inconsistent. Because an IJ "must have a legitimate articulable basis to question the petitioner's credibility, and must offer a specific, cogent reason for any stated disbelief," *Garrovillas v. INS*, 156 F.3d 1010, 1013 (9th Cir.1998) (citations and internal quotations omitted), substantial evidence does not support the IJ's decision to discredit Predtechensky's testimony that his withdrawal was not knowing and voluntary.

## III. *Crediting Sarin.*

The IJ credited Sarin's account of what happened in the spring of 2000, finding that Sarin had "appeared before this Court many times" and was "a straightforward, conscientious individual and zealous advocate for his clients."

■ The question is whether the record contains substantial evidence in support of the IJ's conclusion that Sarin's account of his own behavior should be credited. Predtechensky's current attorney, Paula Harris, called the IJ's attention to several aspects Sarin's behavior, alleging that they evidenced professional misconduct and served as grounds for discrediting Sarin.

---

1. The parties do not dispute the standard that the IJ applied, *i.e.* that in order to be valid, an alien's withdrawal of an asylum application must be "knowing and voluntary." *Cf. Walters v. Reno*, 145 F.3d 1032, 1037 & n. 2 (9th Cir.1998) (noting, in deportation context, that waivers of constitutional rights are only valid "if the government demonstrates that the alien intentionally relinquished a known right or privilege").

The IJ did not address those allegations. And so while we express no opinion on the propriety of Sarin's behavior, we nonetheless conclude that the IJ's familiarity with Sarin's character generally is irrelevant to whether Sarin behaved appropriately in this case specifically. Indeed, the IJ's personal views of Sarin were based on experiences not reflected in the record, and on which she was not permitted to rely. Thus, there was not substantial evidence to support the IJ's decision to credit Sarin.[2]

IV.

■ Because there was not substantial evidence to support the IJ's decisions to discredit Predtechensky and to credit Sarin, there was not substantial evidence to support the conclusion that the withdrawal of the asylum application was "knowing and voluntary." Predtechensky contends, and the INS does not dispute, that if he did not voluntarily withdraw his asylum application, then it would violate due process to deem his application withdrawn. Predtechensky also has shown prejudice, because if the asylum application were deemed withdrawn, then Predtechensky would be deprived of a right he otherwise would have had, that is, the right to have his asylum claim adjudicated on the merits. Thus the IJ abused her discretion in denying Predtechensky's motion to reconsider his motion to reopen.

Predtechensky should be allowed to pursue his application for asylum and withholding of deportation. We grant the petition for review, vacate the decision of the BIA affirming the IJ's decision, and remand to the BIA with instructions to reopen Predtechensky's application for asylum and withholding of deportation and to order a hearing on the merits of those claims before the IJ.

PETITION FOR REVIEW GRANTED. VACATED and REMANDED.

2. The INS attempts to shore up the reasoning of the IJ by arguing that Predtechensky's account of what happened in the spring of 2000 is inconsistent with the language of the May 2000 contract between Sarin and Predtechensky. This argument is unpersuasive because if Sarin was providing ineffective assistance of counsel to Predtechensky, it would be no surprise for Predtechensky to sign a legal services contract that he did not understand.