CLAY, Circuit Judge,
dissenting.
The record in this case compels the conclusion that Petitioner received ineffective assistance of counsel in violation of the Due Process Clause of the Fifth Amendment. Counsel’s egregious neglect of Petitioner’s undeniably meritorious case resulted in the rejection of Petitioner’s application for asylum and should leave this Court with little choice but to grant the petition for review and reverse the order of the BIA denying Petitioner’s motion to reopen. Only by mischaracterizing the record on appeal does the majority reach the opposite conclusion. Therefore, I must dissent.
I.
BACKGROUND
Petitioner, Mame Sene, a citizen of Senegal, seeks asylum in the United States from persecution she has suffered on the basis of her race and political opinion. Petitioner comes from Ziguinchor, Senegal, and is a member of the Diola ethnic group. The Diola are associated with the Movement of Democratic Forces in the Casamance (“MFDC”), a rebel group centered in Ziguinchor and the surrounding Casamance region. According to both the United States Department of State and Amnesty International, Senegalese security forces regularly torture civilians suspected of sympathizing with the MFDC.
On February 8, 1999, Senegalese security forces kidnaped and tortured Petitioner. Approximately ten soldiers grabbed her off the street and forced her into a jeep at gun point. After confirming that Petitioner was Diola in origin, the soldiers drove her to an agricultural school outside of the city and placed her in a small room. There, the soldiers gang-raped her and then mutilated her genitalia, completely excising her labia minora and partially excising her labia majora.[2] Two weeks later, *557 the soldiers transferred Petitioner to a civil jail in Ziguinchor, where she remained for six months without being charged with any crime. Petitioner has been in therapy at New York University School of Medicine’s Program for Survivors of Torture (“NYU Torture Program”) since February of 2001, in order to deal with the resulting Post-Traumatic Stress Disorder and depression.
In February 2000, Petitioner and her mother arrived in the United States. One year later both Petitioner and her mother filed applications for asylum. INS granted Petitioner’s mother’s application but referred Petitioner’s application to an Immigration Judge (“IJ”) for a hearing. Petitioner retained New York attorney, Ronald Solomon, to represent her at the hearing.
Mr. Solomon ignored Petitioner’s ease. He requested continuances on two occasions for reasons not related to Petitioner’s case. On the second occasion, the IJ denied Mr. Solomon’s request for a continuance. Nevertheless, Mr. Solomon failed to appear at Petitioner’s hearing, and the IJ was forced to grant Petitioner an additional three month continuance. The IJ warned Petitioner that she would not receive any more continuances and advised her that she should consider seeking new counsel.
Between May 18, 2001, the date Petitioner hired Mr. Solomon, and January 6, 2003, the date of Petitioner’s hearing before the IJ, Mr. Solomon had exactly one conversation with Petitioner about the merits of her case. The conversation was initiated by Petitioner, who called Mr. Solomon after he missed her scheduled hearing. Mr. Solomon assured Petitioner that he would be at her hearing on January 6, 2003 and that Petitioner should bring her mother to testify. Petitioner informed Mr. Solomon that her mother was going to be out of the country because of a ferry boat accident in Gambia that had killed several family members. Mr. Solomon did not instruct Petitioner to obtain an affidavit, or document of any sort, from her mother regarding her mother’s need to absent herself from the country. Similarly, he did not instruct Petitioner to obtain any medical documentation, despite his knowledge that she was seeking therapy and other medical services from the NYU Torture Program.
On January 6, 2003, the IJ conducted a hearing on the merits of Petitioner’s asylum claim. The only evidence presented on Petitioner’s behalf was her own testimony and country condition reports. Based in part on lack of corroborating evidence, in particular medical evidence and the testimony of Petitioner’s mother, the IJ denied Petitioner’s requests for asylum and withholding of removal. He refused to continue the case but recommended that Petitioner obtain medical evidence and move to reopen.
Mr. Solomon continued to represent Petitioner after the IJ denied her claim. He appealed the IJ’s decision to the BIA and, after the BIA denied the direct appeal, *558 assured Petitioner that he would help her file a motion to reopen her case. He asked Petitioner to obtain a doctor’s report documenting her genital mutilation. Petitioner obtained a report authored by Dr. Dyson for Mr. Solomon, but Mr. Solomon determined that the report was inadequate. Thereafter, Mr. Solomon attempted to arrange an appointment for Petitioner with another doctor. Petitioner, however, could not afford to see the doctor and suggested that she again see Dr. Dyson. Mr. Solomon then informed her that the first report from Dr. Dyson would suffice.
For reasons unclear from the record, Mr. Solomon withdrew from Petitioner’s representation sometime after March 23, 2003, the date on which the BIA denied Petitioner’s direct appeal. When Petitioner learned that Mr. Solomon had not filed a motion to reopen, she was forced to rely on a legal liaison at the NYU torture center, Mr. Wilkinson, for help with her pro se motion. According to Petitioner, Mr. Wilkinson incorrectly advised her that new evidence was proper legal grounds for a motion to reopen and that she had until April 23, 2004 to file such a motion. After obtaining a psychologist’s report corroborating her allegations of past torture, news articles on the ferry accident in Gambia, and a letter from Social Services confirming a gynecologist’s appointment, Petitioner filed a pro se motion to reopen on April 20, 2004. Not surprisingly, the BIA denied Petitioner’s pro se motion, holding that none of the evidence Petitioner submitted with the motion was previously unavailable, and thus Petitioner’s new evidence was not a proper basis for a motion to reopen.
Petitioner then obtained new counsel and filed a second motion to reopen. In her second motion, Petitioner alleged that the BIA should reopen her case due to Mr. Solomon’s ineffective assistance of counsel. Additionally, Petitioner submitted further documentation corroborating her allegations of past persecution, including a doctor’s report stating that an examination of Petitioner revealed that she suffered female genital mutilation and a second, in-depth, psychologist’s report. Nonetheless, the BIA denied Petitioner’s second motion on the grounds that it was number-barred as the regulations grant each asylum applicant only one motion to reopen and Petitioner failed to present evidence that was previously unavailable. Additionally, the BIA determined that Petitioner had failed to demonstrate that she received ineffective assistance of counsel in violation of the Due Process Clause of the Fifth Amendment.
Petitioner now appeals: (1) the IJ’s denial of her asylum claim; (2) the BIA’s denial of her first motion to reopen; and (3) the BIA’s denial of her second motion to reopen. I would grant the requested relief because the BIA abused its discretion in denying Petitioner’s second motion to reopen when it erroneously held that the motion was number-barred and that Petitioner had not received ineffective assistance of counsel.
II.
DISCUSSION
Because Petitioner received ineffective assistance of counsel at her merits hearing, the Fifth Amendment requires the BIA to grant Petitioner a new merits hearing. Contrary to the majority’s opinion, in such cases neither the requirement that evidence be previously unavailable contained in 8 C.F.R. § 1003.2(c)(1) nor the number-bar contained in § 1003.2(c)(2) precludes Petitioner from obtaining relief. Petitioner’s evidence was previously unavailable due to her counsel’s ineffective assistance. Moreover, both this Court and the BIA *559 have the power to waive the number bar contained in § 1003.2(c)(2) in exceptional circumstances. Where counsel’s misrepresentations have caused a petitioner to waste his or her motion to reopen despite the existence of a meritorious claim, the BIA abuses its discretion in declining to waive the numberbar.
A. Petitioner Received Ineffective Assistance of Counsel
1. Standard of Review
This Court reviews the BIA’s denial of an ineffective assistance of counsel claim de novo. Allabani v. Gonzales, 402 F.3d 668, 676 (6th Cir.2005).
2. Due Process Clause of the Fifth Amendment
Counsel is ineffective in violation of the Due Process Clause of the Fifth Amendment where counsel’s errors result in a proceeding that is so fundamentally unfair that the alien was reasonably prevented from presenting his or her case. Denko v. I.N.S., 351 F.3d 717, 724 (6th Cir.2003). To show fundamental unfairness, a party must demonstrate that: (1) counsel erred, or competent counsel would have acted otherwise; and (2) but for counsel’s errors the party would have received asylum. Denko, 351 F.3d at 724.
a. Attorney Error
It is clear that Mr. Solomon’s failure to submit medical reports was an error. The BIA has stated in numerous cases that an applicant’s failure to provide corroborative evidence of torture, where reasonably available, is fatal to an asylum claim. Matter of M-D, 21 I. & N. Dec. 1180, 1181, 1998 WL 127881 (BIA 1998); Matter of S-M-J, 21 I. & N. Dec. 722, 725, 1997 WL 80984 (BIA 1997); see also Dorosh v. Ashcroft, 398 F.3d 379, 382 (6th Cir.2004) (upholding the BIA’s rule requiring corroborating evidence). In particular, the BIA has stated that “an applicant should provide documentary support for material facts which are central to [the applicant’s] claim and easily subject to verification, such as ... documentation of medical treatment. ” Matter of S-M-J, 21 I. & N. Dec. at 725 (emphasis added). As an immigration attorney, Petitioner’s attorney had an obligation to be aware of this well-known rule. Additionally, had Petitioner’s attorney taken the time to speak with her, he would have realized that Petitioner was receiving medical treatment and could easily obtain a report. Thus, Petitioner’s attorney erred in failing to obtain medical reports from Petitioner and submit them to the IJ.
b. Prejudice
Similarly, it is clear that the attorney’s failure to submit medical reports prejudiced Petitioner’s case. According to the IJ at Petitioner’s hearing, “[t]his case could be pretty simple if a doctor confirmed what she said.” (J.A. at 191.) Dr. Deborah Dyson did confirm a substantial amount of what Petitioner claimed. Dr. Dyson confirmed that Petitioner’s genitalia had been mutilated. “Her physical exam reveals the absence of the clitoris and prepuce, total excision of the labia minora and partial excision of the labia mojora [sic].” (J.A. at 93.) Additionally, Petitioner’s psychologist, Adeyinka M. Akinsulure-Smith, wrote “in my clinical and professional opinion, [Petitioner] displays significant symptoms associated with Depression and Post-Traumatic Stress Disorder. These findings are consistent with the severe physical and emotional trauma that she reports experiencing in the past.” (J.A. at 109.) Thus, it is clear that with advice from counsel, Petitioner could have won her asylum claim on the merits. Abay v. Ashcroft, 368 F.3d 634 (6th Cir.2004) (holding that female genital mutilation is a form of persecution).
*560 The majority attempts to undercut the force of Petitioner’s new evidence by relying on the IJ’s statements that he believed a medical report was necessary to show that Petitioner’s injuries were “crudely done” by a “completely untrained and uncaring person,” thereby implying that the IJ would have denied Petitioner’s asylum claim even with the new evidence. Although I find it unlikely that the IJ would have denied Petitioner’s claim, I find it important to make clear that the proper inquiry on prejudice is not whether the IJ would have denied Petitioner’s claim but whether Petitioner was legally entitled to relief on her claim. In this case, had the IJ denied Petitioner’s claim on the merits even after considering Petitioner’s new evidence, the BIA and this Court would have been legally obligated to reverse the IJ’s decision. First, the IJ does not have the authority to require a petitioner to submit corroborating evidence unless such evidence is reasonably available. See Dorosh, 398 F.3d at 382. As Dr. Dyson’s report makes clear, such evidence is not reasonably available because the events in question occurred too long ago. Second, the IJ is not a medical expert and does not have the knowledge or authority to assume that because there was no scarring that a surgeon, and not soldiers, mutilated Petitioner’s genitalia. See Sylla v. I.N.S., 388 F.3d 924, 928 (6th Cir.2004) (holding that the IJ could not speculate on typical prison conditions in Guiana but needed to base his credibility determinations on evidence in the actual record); see also Sulollari v. Gonzales, No. 04-4237, 2005 WL 3275500, *4 (6th Cir. Dec. 5, 2005) (citing Sylla, 388 F.3d at 928). If the IJ made an adverse credibility determination on either basis, both the BIA and this Court would be required to reverse the IJ’s decision. Sylla, 388 F.3d at 928.
Furthermore, the majority inappropriately and offensively implies that Petitioner somehow did not suffer persecution because her genitalia healed without scarring. Maj. Op. (“Importantly, Dr. Dyson states that the ‘external genitalia is totally healed without scarring.”) Female genital mutilation constitutes persecution in this Circuit regardless of whether performed by a surgeon or a soldier. See Abay v. Ashcroft, 368 F.3d at 634. Despite the fact that Petitioner has no scars, she may never be engage in satisfactory intercourse and is at risk for serious and potentially life threatening complications. See id. at 638. Excising a woman’s sex organs is a form degradation that is unacceptable in this country. See id. at 638-39 (“The practice of FGM has been internationally recognized as a violation of women’s and females children’s rights.... Congress criminalized the practice of female genital mutilation under federal law.”) (internal citations omitted). Because Petitioner has undeniably suffered a severe form of persecution and there is absolutely no evidence in the record suggesting that she consented to the persecution, Petitioner has met the burden of proving a well-founded fear of future persecution and would prevail on the merits of her asylum claim. Id. (holding that evidence of past persecution entitles a petitioner to a presumption of a well-founded fear of persecution and refugee status).
Nonetheless, the majority manages to conclude that Petitioner has not established ineffective assistance of counsel. While conceding that the failure to submit documents to the IJ created a “strong likelihood” of prejudice to Petitioner’s case, the majority reasons that Mr. Solomon did not cause this prejudice. In its efforts to support its reasoning, however, the majority is forced to obscure the facts in the record. According to the majority’s version of events, Mr. Solomon did not cause the prejudice Petitioner suffered because Mr. Solomon recommended to Peti *561 tioner that she submit medical documents. The majority, however, misleadingly omits the fact that Mr. Solomon made this recommendation after the IJ denied Petitioner’s asylum application on the merits, stating only that Mr. Solomon made the recommendation “after the IJ stressed the importance of such information.” (Maj.Op. Sec.2.a.) By this time, however, Petitioner had already suffered the requisite prejudice because her claim had been denied on the merits. Mr. Solomon’s advice could not remedy the prejudice she suffered from the denial. A direct appeal, as the record demonstrates, is useless where Petitioner does not submit corroborating evidence to the IJ. In such cases the IJ is legally justified in rejecting a Petitioner’s claim, and the BIA has every right to affirm the IJ’s decision. Thus, a motion to reopen was Petitioner’s only alternative and that is the motion before us today.
B. The BIA Abused Its Discretion in Denying Petitioner’s Motion to Reopen
1. Standard of Review
This Court reviews a BIA’s denial of a motion to reopen for abuse of discretion. Daneshvar v. Ashcroft, 355 F.3d 615 (6th Cir.2004) (citing I.N.S. v. Abudu, 485 U.S. 94, 96, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988)). An abuse of discretion occurs when the BIA exercises its discretion in a way that is arbitrary, irrational, or contrary to law. Id. (citation omitted).
2. The BIA Abused Its Discretion in Holding That Petitioner’s Evidence Was Previously Unavailable
The BIA abused its discretion in holding that § 1003.2(c)(1) barred Petitioner’s motion to reopen because Petitioner failed to present any previously unavailable evidence in support of her motion. Section 1003.2(c)(1) prohibits the BIA from granting a motion to reopen “unless it appears ... that the evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing.” 8 C.F.R. § 1003.2(c)(1). Where a petitioner receives ineffective assistance of counsel, such assistance is deemed to have rendered the petitioner’s evidence previously unavailable within the meaning of § 1003.2(c)(1). See Orehhova v. Gonzales, 417 F.3d 48, 52 (1st Cir.2005). Counsel’s incompetent performance effectively results in a petitioner’s inability to obtain and or present relevant evidence. Perhaps for this very reason, the BIA does not apply § 1003.2(c)(l)’s previously unavailable evidence requirement to apply to ineffective assistance of counsel claims. See Osei v. I.N.S., 305 F.3d 1205, 1208-09 (10th Cir.2002) (noting that the BIA does not apply § 1003.2(c)(1) to motions to reopen based on ineffective assistance of counsel claims).
Moreover, reading § 1003.2(e)(l)’s previously unavailable evidence requirement to bar motions to reopen based on ineffective assistance of counsel claims would render § 1003.2(c)(1) unconstitutional. The Due Process Clause of the Fifth Amendment grants aliens the right to a full and fair hearing in deportation proceedings. Denko, 351 F.3d at 724. Where a petitioner is deprived of a full and fair hearing due to ineffective assistance of counsel, the Fifth Amendment mandates that the petitioner be granted a new hearing. Id. Where the federal Constitution requires that a petitioner be afforded a new hearing, an administrative regulation cannot be used to deny the petitioner that hearing. Any regulation that so conflicts with the Constitution is unconstitutional and unenforceable. Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803)(“Cer-tainly all those who have framed written constitutions contemplate them as forming *562 the fundamental and paramount law of the nation, and consequently the theory of every such government must be, that an act of the legislature, repugnant to the constitution, is void.”). Administrative regulations do not trump the Constitution, rather the Constitution trumps administrative regulations. Thus, the BIA’s determination that Petitioner failed to present previously unavailable evidence is contrary to law and an abuse of discretion.
3. The BIA Abused Its Discretion in Failing to Waive the Number-Bar
Similarly, the BIA’s failure to waive the number-bar as applied to Petitioner constitutes an abuse of discretion. Both the BIA and this Court have the authority to waive the number-bar on motions to reopen in exceptional circumstances.[3] Rodriguez-Lariz v. I.N.S, 282 F.3d 1218, 1224 (9th Cir.2002). Equitable waiver should be granted where a petitioner has exceeded the number-bar in reasonable reliance on misrepresentations of legal counsel or other person purporting to give legal advice, and equity thus weighs in favor of granting the petitioner another opportunity to file. See id. Where “an individual purporting to provide legal representation” has wasted a petitioner’s only opportunity to file a motion to reopen “by ‘filing a worthless motion to reopen,’ ” the petitioner is considered to have exceeded the number-bar in reliance on a misrepresentation and is entitled to equitable waiver. Id.
In this case, Petitioner exceeded the number bar in reliance on Mr. Wilkinson’s misrepresentations. Mr. Wilkinson incorrectly led Petitioner to believe that newly obtained evidence was a basis for a motion to reopen. If Mr. Wilkinson was going to give legal advice, he should have informed himself on the relevant law thus enabling him to inform Petitioner that new evidence, alone, is not a proper legal basis for a motion to reopen. New evidence must also be “previously unavailable” to form grounds for a motion to reopen under 8 C.F.R. § 1003.2(c)(1). Instead, Mr. Wilkinson recommended that Petitioner pursue relief solely on the basis of new evidence that was previously available. Petitioner wasted her first motion to reopen in reliance on Mr. Wilkinson’s incorrect statements of law. Consequently, the BIA’s failure to waive the number bar was contrary to law and an abuse of discretion.
III.
CONCLUSION
For the reasons set forth above, I would grant the petition for review and remand with instructions to the BIA to reopen Petitioner’s asylum application.

. “The Department of State has classified, based on World Health organization typology, the prevalent forms of female genital mutilation. Type I, commonly referred to as ‘clioridectomy,’ is the removal 'of the clitoral hood with or without removal of all or part of the clitoris.’ Type II, commonly referred to as 'excision,' is the removal 'of the clitoris to *557 gether with part or all of the labia minora.’ Type III, commonly referred to 'infibulation,' is the removal 'of part or all of the external genitalia (clitoris, labia minora and labia majora) and stitching or narrowing of the vaginal opening, leaving a very small opening, about the size of a matchstick, to allow for the flow of urine and menstrual blood.’ ” Abay v. Ashcroft, 368 F.3d 634, 638 n. 1 (6th Cir. 2004) (quoting Prevalence of the Practice of Female Genital Mutilation (FGM); Laws Prohibiting FGM and. Their Enforcement; Recommendations on How to Best Work to Eliminate FGM, U.S. Dep't of State, Report on Female Genital Mutilation, at 5 (updated 27, 2001), available at http:// www.state.gov/g/wi/rls/rep/c6466.htm). Petitioner seems to have suffered a version of FGM between Type II and III.

. The majority states that equitable waiver is not available in this jurisdiction because this Circuit has not expressly held that it exists; that simply makes equitable waiver under these circumstances an issue of first impression in this Circuit, not improper.