**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EDELFO ALBILLO-DE LEON,

　　　　　　　　　*Petitioner,*

　　　　　　v.

ALBERTO R. GONZALES,* Attorney
General,

　　　　　　　　　*Respondent.*

No. 02-70246

Agency No.
A29-141-465

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 8, 2005—Pasadena, California

Filed June 8, 2005

Before: Mary M. Schroeder, Chief Judge, Harry Pregerson,
and Stephen S. Trott, Circuit Judges.

Opinion by Judge Pregerson

---

　　*Alberto R. Gonzales is substituted for his predecessor, John Ashcroft,
as Attorney General of the United States, pursuant to Fed. R. App. P.
43(c)(2).

## COUNSEL

Adrienne Ehrhardt, Snell & Wilmer, LLP, Tucson, Arizona, for the petitioner.

Jason S. Patil (argued) and Shelley R. Goad (briefed), Office of Immigration Litigation, Civil Division, Washington, D.C., for the respondent.

## OPINION

PREGERSON, Circuit Judge:

An Immigration Judge ("IJ") dismissed Petitioner Edelfo Albillo-DeLeon's motion to reopen his deportation proceedings as untimely. The Board of Immigration Appeals ("BIA") affirmed without opinion. We have jurisdiction under 8 U.S.C. § 1252. For the reasons set forth below, we grant Albillo-DeLeon's petition and remand to the BIA for further proceedings.

## I.   Factual and Procedural Background

Albillo-DeLeon, a native and citizen of Guatemala, entered the United States without inspection on February 29, 1988. He has lived continuously in the United States for the last seventeen years. On May 3, 1988, shortly after arriving in the United States, Albillo-DeLeon applied for asylum. On April 3, 1989, the Immigration and Naturalization Service ("INS")[1] issued Albillo-DeLeon an Order to Show Cause, charging that he was deportable because he entered the United States without inspection. Albillo-DeLeon appeared at a deportation hearing and conceded deportability.

At the deportation hearing, Albillo-DeLeon sought asylum, withholding of deportation, and voluntary departure. On

---

[1]The INS ceased to exist on March 1, 2003, when its functions were transferred to the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135. However, we refer to the agency as the INS here because the proceedings in this case were instigated before the transfer.

November 17, 1989, the IJ denied Albillo-DeLeon's application for asylum and withholding of deportation but granted his request for voluntary departure. Albillo-DeLeon appealed this decision to the BIA. The BIA dismissed his appeal without opinion.

## A. *Implementation of NACARA*

On November 19, 1997, Congress passed the Nicaraguan Adjustment and Central American Relief Act ("NACARA"), Pub. L. No. 105-100, 111 Stat. 2160 (1997), amended by Pub. L. No. 105-139, 111 Stat. 2644 (1997). NACARA established special rules to permit certain classes of aliens, including nationals of Guatemala, to apply for "Special Rule Cancellation." Special Rule Cancellation allows designated aliens to qualify for cancellation under the more lenient suspension of deportation standard that existed before the passage of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (1996). *See Munoz v. Ashcroft*, 339 F.3d 950, 955-56 (9th Cir. 2003).

### 1. *Filing a Motion to Reopen Under § 203(c)*

NACARA section 203(c) allows an alien one opportunity to file a petition to reopen his or her deportation or removal proceedings to obtain cancellation of removal. A motion to reopen will not be granted unless an alien can demonstrate prima facie eligibility for relief under NACARA. *See Ordonez v. INS*, 345 F.3d 777, 785 (9th Cir. 2003). An alien can make such a showing if he or she has complied with section 203(a)'s filing deadlines, is a native of one of the countries listed in NACARA, has lived continuously in the United States for at least ten years, has not been convicted of any crimes, is a person of good moral character, and can demonstrate extreme hardship if forced to return to his or her native country.[2] *See* NACARA §§ 203(a),(b), and (c); *see also* 8

---

[2]Section 203(b) provides that an alien may establish eligibility for cancellation of removal if he or she —

C.F.R. § 1003.43(b) (2004). Such a showing need not be conclusive but need suggest only that it would be "worthwhile" to reopen proceedings. *Ordonez*, 345 F.3d at 785.

## 2. *Deadline for Filing a Motion to Reopen under § 203(c)*

Section 203(c) does not identify by date the deadline for filing a motion to reopen deportation or removal proceedings. Instead, the statute states:

> The Attorney General shall designate a specific time period in which all such motions to reopen are required to be filed. The period shall begin not later than 60 days after the date of the enactment of the Nicaraguan Adjustment and Central American Relief Act and shall extend for a period not to exceed 240 days.

NACARA § 203(c). By regulation, the Attorney General set the deadline at September 11, 1998. *See* 8 C.F.R. § 1003.43(e)(1) (2004) (formerly 8 C.F.R. § 3.43(e)(1) (2002)).[3]

---

(iii)   has been physically present in the United States for a continuous period of not less than 10 years immediately following the commission of an act, or the assumption of a status, constituting a ground for removal;

(iv)   has been a person of good moral character during such period; and

(v)   establishes that removal would result in exceptional and extremely unusual hardship to the alien or to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

*See* NACARA § 203(b).

[3]An application for special rule cancellation of removal, to accompany the motion to reopen, must have been submitted no later than November 18, 1999. *See* 8 C.F.R. § 1003.43(e)(2) (formerly 8 C.F.R. § 3.43(e)(2) (2004)).

### B.   *Albillo-DeLeon's Motion to Reopen Proceedings*

On September 10, 1998, Albillo-DeLeon retained Jovel Mendez, who he believed to be an attorney, to file on his behalf a motion to reopen proceedings pursuant to section 203(c). After the filing deadline passed, Albillo-DeLeon did not receive any correspondence from the Immigration Court or from Mendez. He followed-up with Mendez, requesting information regarding the status of his motion.

Mendez assured Albillo-DeLeon that the motion had been filed. Nevertheless, rather than provide Albillo-DeLeon with specific information regarding the status of Albillo-DeLeon's motion, Mendez demanded additional money to investigate further. Albillo-DeLeon refused to pay and became suspicious of Mendez.

In September 1999, Albillo-DeLeon went to the Immigration Court, where a court clerk informed him that the court had no record of Albillo-DeLeon's motion. The clerk directed Albillo-DeLeon to file a request under the Freedom of Information Act ("FOIA") to learn definitively the status of his motion. Per the clerk's instructions, Albillo-DeLeon filed a FOIA request. On April 3, 2000, Albillo-DeLeon received a copy of his court file and learned that Mendez never filed the motion. Albillo-DeLeon also learned for the first time that Mendez was not an attorney but an immigration consultant and notario.[4]

On August 2, 2000, Albillo-DeLeon retained new counsel and successfully filed a motion to reopen with the BIA. In his motion, Albillo-DeLeon requested that the time limitation for filing his motion be equitably tolled because of ineffective

---

[4]Because Mendez was a notario and not a licensed attorney, Albillo-DeLeon did not file a formal complaint with the California State Bar. However, Albillo-DeLeon did file a complaint with the INS to notify it of Mendez's fraudulent misrepresentations.

assistance of counsel. Albillo-DeLeon explained that he failed to meet the September 11, 1998, filing deadline only because he believed Mendez's representations that he was an attorney and that he would timely file Albillo-DeLeon's motion to reopen. On May 10, 2001, the IJ denied the motion as untimely and refused to equitably toll the deadline. Albillo-DeLeon appealed the denial to the BIA. On January 31, 2002, the BIA affirmed the IJ's decision without opinion. This appeal followed.

## II.  Discussion

### A.  Standard of Review

The BIA's interpretation and application of immigration laws is generally entitled to deference. *See Simeonov v. Ashcroft*, 371 F.3d 532, 535 (9th Cir. 2004). Nevertheless, we are not obligated to accept an interpretation that is demonstrably irrational or clearly contrary to the plain and sensible meaning of the immigration laws. *See id.*; *Jahed v. INS*, 356 F.3d 991, 997 (9th Cir. 2004). Because the BIA did not perform an independent review of the IJ's decision and instead deferred to the IJ, we review the IJ's decision. *See Khup v. Ashcroft*, 376 F.3d 898, 902 (9th Cir. 2004).

### B.  Albillo-DeLeon Is Likely Eligible for "Special Rule Cancellation"

Albillo-DeLeon is likely to demonstrate a prima facie case for "Special Rule Cancellation" relief. He is a native of Guatemala who applied for asylum on May 3, 1988, and has lived continuously in the United States since February 29, 1988. He has not been convicted of any crimes and is a person of good moral character. Albillo-DeLeon is sixty years-old. He is married, lives with, and supports at least four of his children. Two of these children were born in the United States. After seventeen years in the United States, forcing Albillo-DeLeon to return to Guatemala would likely pose an extreme hardship.

*See Baltazar-Alcazar v. INS*, 386 F.3d 940, 949 (9th Cir. 2004) (suggesting that courts review, among other things, the petitioner's age, length of residence in the United States, and family ties in the United States when making a hardship determination). Thus, it is likely that Albillo-DeLeon would be successful should his motion to reopen be deemed timely.

### C. Section 203 Is a Statute of Limitations

[1] The pivotal issue in this case is whether section 203(c)'s limitation period operates as a jurisdictional prerequisite or a statute of limitations, because only a statute of limitations may be subject to equitable tolling. Statutes of limitation are primarily designed to assure fairness to defendants and to promote the theory that "even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 428 (1965) (quoting *Order of R.R. Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342, 348-49 (1944)). Further, such limitations relieve courts of the burden of adjudicating stale claims when a plaintiff has slept on his rights. *See id.*

[2] In contrast, a limitation period is not subject to equitable tolling if it is jurisdictional in nature. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). A jurisdictional time limitation cannot be modified, and noncompliance with such a limitation is an absolute bar. *See Miller v. N.J. State Dep't of Corrs.*, 145 F.3d 616, 617-18 (3d Cir. 1998).

[3] When determining whether a statute of limitations is jurisdictional or merely a time limitation subject to equitable tolling, the Supreme Court has recognized that, while several factors must be examined, the main purpose of the inquiry is to discover congressional intent behind the statute. *See Shendock v. Dir., Office of Workers' Comp. Programs*, 893 F.2d 1458, 1462 (3d Cir. 1990) ("[A]ttachment of the label 'juris-

diction' to a statute's filing requirements without examination of its language and structure, as well as the congressional policy underlying it, would be an abdication of our duty to interpret the language of a statute in accordance with Congress's intent in passing it."); *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 501 (3d Cir. 1998).

To determine congressional intent, we examine the purposes and policies underlying the limitation provision — NACARA itself — and the remedial scheme developed for the enforcement of the rights given by NACARA. *See Burnett*, 380 U.S. at 427.

### 1.   *Congress's Intent in Enacting NACARA*

Congress enacted section 203 of NACARA in reaction to IIRIRA's severe consequences in making thousands of immigrants, including those from Guatemala, ineligible for suspension of deportation. *See* 144 Cong. Rec. S9973 (daily ed. Sept. 8, 1998) (statement of Sen. Durbin) ("In 1997, this Congress recognized [IIRIRA] could result in grave injustices to certain groups of people."), *available at* 1998 WL 567464. In introducing an amendment to NACARA, one of its original sponsors recognized that

> Salvadorans, Guatemalans, Haitians and Hondurans have now established roots in the United States. Some have married here and many have children that were born in the United States. Yet many still live in fear. They cannot easily leave the United States and return to the great uncertainty in their countries of origin. If they are forced to return, they will face enormous hardship. Their former homes are either occupied by strangers or not there at all. The people they once knew are gone and so are the jobs they need to support their families. They also cannot become permanent residents of the United States, which severely limits their opportunities for work

and education. This situation is unacceptable and requires a more permanent solution.

. . . .

Such an alteration of [IIRIRA] made sense. After all, the U.S. had allowed Central Americans to reside and work here for over a decade, during which time many of them established families, careers and community ties. The complex history of civil wars and political persecution in parts of Central America left thousands of people in limbo without a place to call home. Many victims of severe persecution came to the United States with very strong asylum cases, but unfortunately these individuals have waited so long for a hearing they will have difficulty proving their cases because they involve incidents which occurred as early as 1980. In addition, many victims of persecution never filed for asylum out of fear of denial, and consequently these people now face claims weakened by years of delay.

. . . While restoration of democracy in Central American and the Caribbean has been encouraging, the situation remains delicate. Providing immigrants from these politically volatile areas an opportunity to apply for permanent resident status in the United States instead of deporting them to politically and economically fragile countries will provide more stability in the long run . . . . If we continue to deny them a chance to live in the United States by deporting them, we not only hurt them, we hurt us too.

*Id.* at S9973-74. Thus, having promulgated section 203 in reaction to IIRIRA's harsh results and recognizing that NACARA would give certain immigrants relief from that harshness, we presume that it would be contrary to Congress's

intent that relief for aliens like Albillo-DeLeon could be cut short and subjected to a severe jurisdictional time limit.

A memorandum from five Senators, which discusses the purposes and limitations of NACARA, provides even greater conclusive evidence that Congress intended section 203(c) to function as a statute of limitations. When NACARA was introduced in 1997, these Senators noted that "nothing [in section 203(c)] prevents the Attorney General from adopting an approach to the deadlines set out here consistent with application of ordinary tolling principles." 143 Cong. Rec. S12265-67 (daily ed. Nov. 9, 1997) (Explanatory Memorandum Regarding Title II of the D.C. Appropriations Po[r]tion of the Omnibus Appropriations Bill Submitted by Sens. Mack, Graham, Abraham, Kennedy, and Durbin), *available at* 1997 WL 693186. In the memorandum, equitable tolling is addressed *only* with respect to motions to reopen; tolling was not identified as applying to any other portion of NACARA.

**[4]** Thus, because NACARA was specifically created to provide relief for aliens like Albillo-DeLeon and because its legislative history clearly suggests that equitable tolling should be applied to motions to reopen, we conclude that section 203(c) was designed to be a statute of limitations, not a jurisdictional prerequisite.

## 2. *Munoz v. Ashcroft*

Less than two years ago, in *Munoz,* we were asked to determine whether section 203(a) of NACARA was subject to equitable tolling. 339 F.3d at 956-58. Section 203(a) identifies the threshold requirements for NACARA eligibility. To qualify for relief under NACARA, section 203(a) requires that an alien file an asylum application by April 1, 1990, and apply for certain benefits by December 31, 1991. In *Munoz*, the petitioner applied for asylum on August 23, 1997, shortly after he turned eighteen years old. *See Munoz,* 339 F.3d at 953. The petitioner argued that the eligibility filing dates

should be equitably tolled until one year after he reached the age of majority. *See id.* at 956.

We disagreed, concluding that the NACARA eligibility filing deadlines (April 1, 1990, and December 31, 1991) are cut-off dates. *See id.* at 957. Noting that section 203(a) is "fixed by statute and unrelated to any variable," and serves to define and close class eligibility, we deemed the provision a jurisdictional statute of repose and therefore not subject to equitable tolling.[5] *Id.*

### 3.  *Application to this Case*

The government contends that this case is analogous to *Munoz*, and that we should conclude that section 203*(c)*, like section 203*(a)*, is jurisdictional and not subject to equitable tolling. For the reasons set forth below, we find that section 203(c) is readily distinguishable from section 203(a).

First, section 203(a) involves a threshold condition for eligibility under NACARA. Section 203(c), on the other hand, serves a more limited purpose and applies to a smaller group — namely, to only those aliens who have *already complied* with section 203(a)'s filing deadlines. Albillo-DeLeon has already met section 203(a)'s threshold requirements and is likely eligible for cancellation of removal. In moving to reopen his deportation proceedings, he is merely attempting to obtain that relief under the more generous rules in place before IIRIRA was enacted. This is exactly the purpose for which NACARA was enacted.

---

[5]A statute of repose, like a jurisdictional prerequisite, "extinguishes a cause of action after a fixed period of time . . . regardless of when the cause of action accrued." 51 Am. Jur. 2d *Limitation of Actions* § 12 (2004); *see also Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991) (finding that a statute of repose is a fixed, statutory cutoff date, usually independent of any variable, such as claimant's awareness of a violation).

In addition, section 203(c), unlike section 203(a), does not identify a specific cutoff date by which a petitioner must file his or her motion to reopen proceedings. Rather, section 203(c) states that the filing deadline "shall begin not later than 60 days after the date of the enactment of the [NACARA] and shall extend for a period not to exceed 240 days" but allows the Attorney General discretion in fixing the date.[6] NACARA § 203(c).

Finally, as discussed above, the legislative history suggests that Congress intended that motions to reopen be subject to equitable tolling. *See* 143 Cong. Rec. S12265-67. The government contends that we should ignore the legislative history because section 203(c)'s plain language "provides clear intent that it is to serve as a statute of repose." The government is correct in noting that where the plain meaning of a statute's language is clear, the sole function of the courts is to enforce the statute. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). However, section 203(c)'s plain language does *not* suggest that the statute is jurisdictional. Rather, the absence of any language clearly proclaiming the filing deadline as "jurisdictional" suggests that the statute is *not* jurisdictional but a statute of limitations. *See Zipes,* 455 U.S. at 393-94 (holding that filing deadline was a statute of limitations, not a jurisdictional prerequisite, where the statutory language did not specifically identify the statute as jurisdictional, and the legislative history characterized the filing deadline as a "period of limitations"); *see also United States v. Locke*, 471 U.S. 84, 94 n.10 (1985) ("Statutory filing deadlines are generally subject to the defenses of waiver, estoppel, and equitable tolling.")

Because section 203(c)'s plain language does not contain any references, specific or otherwise, to suggest that the filing

---

[6]The specific regulatory time frame for motions to reopen is found at 8 C.F.R. § 1003.43(e). Like the language of § 203(c) itself, the federal regulations do not describe these time limits as jurisdictional.

deadline is jurisdictional, and because section 203(c) is readily distinguishable from section 203(a), we find that *Munoz* is not controlling.

### D. Section 203(c) Is Subject to Equitable Tolling

Just because section 203(c) is a statute of limitations, it does not automatically follow that section 203(c) is subject to equitable tolling. Rather, there is only a *rebuttable presumption* that section 203(c), as a statute of limitations, is subject to equitable tolling. *See Munoz*, 339 F.3d at 956.

**[5]** However, Congress's intent in enacting section 203(c) was to provide those aliens who met the threshold requirements of section 203(a) an opportunity to reopen their removal or deportation proceedings in order to benefit from the more generous pre-IIRIRA rules. Further, NACARA's legislative history demonstrates that Congress intended that equitable tolling apply to motions to reopen. Thus, because section 203(c)'s language and its legislative history do not rebut the presumption that it is subject to equitable tolling, we conclude that section 203(c) is subject to equitable tolling.

### E. Albillo-DeLeon Is Entitled to Equitable Tolling

We must next determine whether equitable tolling is appropriate in this case. *See Burnett*, 380 U.S. at 427 (requiring that the court determine "whether congressional purpose is effectuated by tolling the statute of limitations in [these] circumstances"); *King v. California*, 784 F.2d 910, 914-15 (9th Cir. 1986) (stating that the "basic inquiry" in "decid[ing] whether equitable tolling should apply" is "whether tolling the statute in certain situations will effectuate . . . congressional purpose").

#### 1. Albillo-DeLeon Was Denied Effective Assistance of Counsel

**[6]** Albillo-DeLeon contends that the deadline for filing his motion to reopen should be equitably tolled because his

untimeliness was the direct result of ineffective assistance of counsel. It is well established in this circuit that ineffective assistance of counsel, where a nonattorney engaged in fraudulent activity causes an essential action in his or her client's case to be undertaken ineffectively, may equitably toll the statute of limitations. *See Fajardo v. INS*, 300 F.3d 1018, 1020 (9th Cir. 2002); *Rodriguez-Lariz v. INS,* 282 F.3d 1218, 1224 (9th Cir. 2002); *Socop-Gonzalez v. INS*, 272 F.3d 1176, 1187-88, 1193-96 (9th Cir. 2001); *Varela v. INS*, 204 F.3d 1237, 1240 (9th Cir. 2000); *Lopez v. INS*, 184 F.3d 1097, 1098 (9th Cir. 1999).

For example, in *Lopez*, the petitioner hired "counsel" to represent him in obtaining a work permit. *Id.* at 1098. Unknown to Lopez, he had retained the services of a notary, not a licensed attorney. *See id.* at 1099. The notary filed an application for political asylum (rather than a work permit), instructed Lopez not to attend the INS interview or deportation hearing, and failed to appear on Lopez's behalf. *See id.* at 1098. Lopez was ordered deported in absentia. *See id.* at 1099. Lopez hired new counsel and filed a motion to reopen his proceedings because of ineffective assistance of counsel, which the BIA dismissed as untimely. *See id.* at 1098. On appeal, we reversed, holding that "the statute of limitations to reopen an order of deportation is equitably tolled where the alien's late petition is the result of the deceptive actions by a notary posing as an attorney." *Id.* at 1100.

**[7]** Like *Lopez*, Albillo-DeLeon was affirmatively deceived by a nonattorney. On September 10, 1998, within the filing deadline, Albillo-DeLeon paid Mendez to file a motion to reopen under NACARA. When Albillo-DeLeon did not receive any correspondence from the Immigration Court or from Mendez, he followed-up with Mendez. Growing suspicious of Mendez, Albillo-DeLeon acted diligently, seeking the advice of a clerk at the Immigration Court and filing a FOIA request to determine the true status of his file. When Albillo-DeLeon learned of Mendez's deception, he retained

an attorney and filed a second motion to reopen. Albillo-DeLeon's first motion was not filed *solely* because of Mendez's inaction and deception. Therefore, we find equitable tolling appropriate in this case.

### 2. *Albillo-DeLeon's Motion to Reopen Was Timely*

The government asserts that Albillo-DeLeon's motion to reopen is untimely because he first learned that he had received ineffective assistance in September 1999 but failed to file his motion to reopen until August 2000.

"In tolling statutes of limitations, courts have typically assumed that the event that 'tolls' the statute simply *stops the clock* until the occurrence of a later event that permits the statute to resume running." *Socop-Gonzalez*, 272 F.3d at 1195. Equitable tolling will be applied in situations where, "despite all due diligence, [the party requesting equitable tolling] is unable to obtain vital information bearing on the existence of the claim." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995) (internal quotations and citation omitted).

Albillo-DeLeon first became *concerned* with Mendez's performance in September 1999. But Albillo-DeLeon did not definitively learn that Mendez failed to file his motion until April 3, 2000, when Albillo-DeLeon received a copy of his court file pursuant to his FOIA request. Only when Albillo-DeLeon received his court file on April 3, 2000, did he finally "obtain vital information bearing on the existence of the claim." *Id*.

**[8]** Nor was Albillo-DeLeon's September 1999 to April 2000 delay in obtaining this vital information due to any lack of diligence on his part. Further, once he became suspicious, Albillo-DeLeon acted diligently in making his FOIA request and retaining new counsel. *See Iturribarria v. INS*, 321 F.3d 889, 897 (9th Cir. 2003) (recognizing equitable tolling on

motion to reopen during periods when petitioner is prevented from filing because of deception, fraud, or error, as long as the petitioner "acts with due diligence in discovering the deception, fraud, or error"); *Rodriguez-Lariz*, 282 F.3d at 1225 (finding due diligence where petitioners, after learning *conclusively* that they had been misled by a non-attorney, promptly retained new counsel and filed a motion to reopen). Once Albillo-DeLeon became suspicious of Mendez's performance, he promptly contacted the Immigration Court and filed his FOIA request. Accordingly, we find that Albillo-DeLeon's deadline for filing his motion to reopen was tolled to April 3, 2000, the date he conclusively learned of Mendez's deficient representation.

[9] Section 203(c) provides aliens with 238 days to file a motion to reopen proceedings. *See* NACARA § 203(c) (recommending to the Attorney General that the period for filing a motion to reopen not exceed 240 days); 8 C.F.R. § 1003.43(e)(1) (allowing aliens to file a motion to reopen from January 16, 1998 to September 11, 1998 — 238 days). In this case, Albillo-DeLeon filed his motion to reopen on August 2, 2000, 121 days after he received his FOIA response. Because Albillo-DeLeon filed his motion to reopen within 121 days of learning that Mendez failed to file his motion to reopen — well under the 238 days afforded by section 203(c) — we find that it was timely filed.

## III.   Conclusion

For the reasons set forth above, we find that section 203(c) of NACARA is a statute of limitations subject to equitable tolling. Further, we conclude that equitable tolling is appropriate in this case because Albillo-DeLeon was deceived and severely prejudiced by Mendez's ineffective assistance. Accordingly, we **GRANT** Albillo-DeLeon's petition for review and **REMAND** to the BIA for further proceedings not inconsistent with this opinion.