**Jesus HERNANDEZ LUCENA; et al., Petitioners,**

v.

**Alberto R. GONZALES, Attorney General, Respondent.**

No. 04–72358.

United States Court of Appeals, Ninth Circuit.

Submitted May 4, 2006.*

Filed Dec. 26, 2006.

---

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

See also, 2002 WL 31907316.

Alan R. Diamante, Los Angeles, CA, for Petitioners.

Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, Ronald E. Lefevre, Chief Legal Officer, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, OIL, U.S. Department of Justice, Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: HAWKINS and PAEZ, Circuit Judges, and WAKE,** District Judge.

MEMORANDUM ***

Jesus Hernandez Lucena and Santa Delia Partida Flores (together, "Petitioners") petition for review of the Board of Immigration Appeals' ("BIA") order affirming an immigration judge's ("IJ") denial of their motion to reopen in absentia removal proceedings. We have jurisdiction under 8 U.S.C. § 1252, and we grant the petition for review and remand for further proceedings.[1]

The BIA may rescind an in absentia removal order if, within 180 days, the alien files a motion to reopen demonstrating exceptional circumstances that could excuse the alien's failure to appear. 8 U.S.C. § 1229a(b)(5)(C)(i). Exceptional circumstances include circumstances beyond the control of the alien, such as serious illness or death of an immediate relative. 8 U.S.C. § 1229a(e)(1).

Ineffective assistance of counsel ("IAC") may also be an exceptional circumstance warranting rescission of an in absentia removal order. *Reyes v. Ashcroft,* 358 F.3d 592, 596 (9th Cir.2004). Here, Petitioners argue that, in failing to attend the February 3, 2003 hearing, because they relied on the fraudulent representation and advice of their non-attorney immigration consultant, Estela Rodriguez they did not attend the February 3, 2003 hearing. To succeed in a motion to reopen on the basis of IAC, the alien must substantially comply with the procedural requirements of *Matter of Lozada,* 19 I. & N. Dec. 637, 639 (BIA 1988). Unlike other contexts in which an

---

** The Honorable Neil V. Wake, United States District Judge for the District of Arizona, sitting by designation.

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir. R. 36–3.

1. We review for abuse of discretion the denial of a motion to reopen deportation proceedings. *Maravilla Maravilla v. Ashcroft,* 381 F.3d 855, 857 (9th Cir.2004). We review *de novo* issues of law. *Varela v. INS,* 204 F.3d 1237, 1239 (9th Cir.2000). We review for substantial evidence the IJ's factual determinations. *INS v. Elias–Zacarias,* 502 U.S. 478, 483–84, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). "Where factual assertions in affidavits supporting a motion to reopen are specific and not conclusory ... the BIA must accept their truth unless they are inherently incredible." *Mattis v. INS,* 774 F.2d 965, 968 (9th Cir. 1985).

alien raises IAC in removal proceedings, the BIA, "does not require a showing of prejudice to obtain relief from an in absentia order." *In re Rivera–Claros,* 21 I. & N. Dec. 599, 603 n. 1 (BIA 1996); *see also Lo v. Ashcroft,* 341 F.3d 934, 939 (9th Cir.2003).

■ In certain circumstances, ineffective assistance of a non-attorney immigration consultant can form the basis of equitable relief in the context of removal proceedings. We have held repeatedly that an immigration consultant's deficient performance may equitably toll the deadline to file a motion to reopen removal proceedings. *See, e.g., Albillo–De Leon v. Gonzales,* 410 F.3d 1090, 1099 (9th Cir. 2005); *Varela,* 204 F.3d at 1240; *Lopez v. INS,* 184 F.3d 1097, 1100 (9th Cir.1999). We have also held that ineffective assistance of a non-attorney immigration consultant can form the basis for equitable tolling of the numerical limit on motions to reopen imposed by 8 C.F.R. § 1003.2(c). *See Fajardo v. INS,* 300 F.3d 1018, 1019 (9th Cir.2002); *Rodriguez–Lariz v. INS,* 282 F.3d 1218, 1227 (9th Cir.2002). In light of these cases, that Rodriguez did not hold herself out as an attorney does not categorically preclude Petitioners from basing their motion to reopen on Rodriguez's ineffective assistance. The BIA's conclusion to the contrary was legal error.

■ The BIA, however, did not dismiss Petitioners' appeal on the basis of its erroneous legal conclusion. Rather, it also adopted the decision of the IJ, including "agree[ing] with the [IJ] that the [Petitioners were] properly notified of the hearing, and therefore had an obligation to be present." We therefore review whether the BIA abused its discretion in denying the motion to reopen on the merits. *See Kataria v. INS,* 232 F.3d 1107, 1112 (9th Cir. 2000).[2]

■ The Government argues that we should not apply the holdings in the above cases to Petitioners' motion to reopen because these cases are limited to circumstances in which the alien sought equitable tolling, a claim not relevant here. The Government's argument, however, is unavailing. The principle underlying equitable tolling, that fraudulent action "by an individual purporting to provide legal representation" should be remedied in equity, applies with equal force in the context of considering whether such fraud has rendered the administrative proceeding "so fundamentally unfair that an alien was prevented from reasonably presenting his case." *Rodriguez–Lariz,* 282 F.3d at 1226 (internal quotation marks omitted); *see also Fajardo,* 300 F.3d at 1021–22; *Varela,* 204 F.3d at 1240. The same equitable principle guiding these cases applies to our review of the instant petition. Two cases frame our analysis.

2. We note that in one significant respect the factual basis of the IJ's denial of the motion is not supported by evidence in the record. The IJ referred to Valinoti as Petitioners' "prior counsel" and concluded that their motion "does not demonstrate that [Petitioners] were ineffectively assisted by the attorney authorized to represent them or otherwise face exceptional circumstances that would merit reopening their removal proceedings." Nothing in the administrative record indicates that Petitioners ever retained Valinoti. Rather, the record reflects that when Rodriguez first met with Petitioners, she represented that she could adjust Petitioners' immigration status and perform other legal services. When the IJ instructed Petitioners to supplement their application for cancellation of removal, Rodriguez assured Petitioners that she would prepare the supplemental materials for them and told Petitioners that she "worked with" attorney Valinoti who would "make sure [their] cases were properly resolved."

In *Singh–Bhathal v. INS*, the INS ordered Singh deported in absentia after he failed to appear at a deportation hearing. 170 F.3d 943, 945 (9th Cir.1999). Singh appealed the BIA's order affirming the IJ's grant of an INS motion to reconsider the decision of a prior IJ to rescind the in absentia deportation order. *Id.* Singh did not attend the deportation hearing "[p]ursuant to advice he received from a private immigration consultant." *Id.* at 944. In his petition for review, he argued that the in absentia deportation order deprived him of a fair hearing because "the advice given him by the immigration consultant not to appear at the hearing constitutes an exceptional circumstance." *Id.* at 946. We held that "[a]lthough Singh may have received poor advice, this does not alter the fact that he failed to appear at his hearing ... because he took the word of the consultant over that of the INS." *Id.* at 947.

We reached a different result in *Fajardo*. There, the INS similarly ordered Fajardo deported in absentia after she failed to appear at a deportation hearing. 300 F.3d at 1019. Fajardo petitioned for review of the BIA's order affirming the denial of her motion to reopen the in absentia deportation order. *Id.* at 1019. Fajardo alleged that she did not attend the deportation hearing because her "immigration paralegal," Serra, did not inform her about her need to appear, despite her periodic inquiry into the status of her application for political asylum. *Id.* at 1018–19. Serra advised and assisted Fajardo on her asylum application for at least five years, *id.*, after which Fajardo paid Levin, a second non-attorney consultant, to handle her appeal to the BIA. *Id.* Levin failed timely to file the appeal, and the BIA denied it as untimely. *Id.*

In granting Fajardo's petition for review—which she filed with new counsel—we held the circumstances warranted equitable tolling of the numerical limitation on motions to reopen, concluding that "[t]he IJ's categorical refusal to consider the actions of Serra and Levin as a basis for reopening Fajardo's proceedings solely because they were not attorneys ... is ... clearly erroneous." *Id.* at 1022. We remanded Fajardo's motion to reopen to determine "whether Serra's failure to inform Fajardo of her need to attend her deportation hearing constitutes 'exceptional circumstances' excusing her failure to appear." *Id.* In so doing, we noted: "It is difficult to imagine how Serra's failure to inform Fajardo of her need to appear at her deportation hearing would not constitute an exceptional circumstance excusing her absence." *Id.* at 1022 n. 8.

Our analysis of whether the instant petition is analogous to *Singh–Bhathal*, where the petitioner's reliance on the immigration consultant's advice did not justify his failure to appear, or *Fajardo*, where we strongly suggested that it would have, turns on the factual circumstances of each case. *See Singh v. INS*, 213 F.3d 1050, 1052 (9th Cir.2000). In *Singh–Bhathal*, there was no allegation of fraud. The factual recitation does not disclose whether Singh had established an ongoing relationship with the consultant or whether he merely obtained the erroneous advice after a one-time consultation with the non-attorney. In contrast, as detailed in *Fajardo*, Fajardo had relied on Serra for over five years and, even after *Fajardo* confronted him about his error, he attempted to mask his mistake in the subsequent motion he filed on Fajardo's behalf. *See* 300 F.3d at 1019.

■ Although at first blush *Singh–Bhathal* may appear to govern this case, the facts here are more analogous to those in *Fajardo*. Here, for over three years, Petitioners relied on their non-attorney immigration consultant Rodriguez's representations that she could obtain both work permits and legal resident status for them

and they paid her substantial sums for this legal assistance. Instead, unbeknownst to Petitioners, Rodriguez filed petitions for political asylum on their behalf for the deceptive purpose of "getting [their] cases into court." [3] As stated in their declaration, when Petitioners later confronted Rodriguez about the inadequate applications for cancellation of removal that she subsequently prepared for them, Rodriguez informed Petitioners that she would prepare new applications in time for the next hearing, and referred Petitioners to Valinoti, the immigration attorney that "worked with her" and "could make sure that [their] cases were properly resolved." It is in this context that Petitioners relied on Rodriguez's subsequent advice when she informed them that they should not attend the February 3 hearing. Rodriguez's misrepresentations, like that of Serra and Levin, "implicitly resound in fraud." 300 F.3d at 1021.

Moreover, shortly after Rodriguez referred Petitioners to her colleague Valinoti, the State Bar Court recommended that he be suspended from practice for five years for helping non-attorney immigration consultants to practice law without a license [4] and other violations of state and federal rules of professional responsibility relating to his representation of clients in immigration proceedings. Although the record does not reflect that Rodriguez ever informed Petitioners of these charges or whether she, herself, as someone who worked with Valinoti, was implicated in them, Rodriguez's apparent association with Valinoti provides contextual background for understanding Petitioners' claims that Rodriguez's actions constituted fraud. The attempts of Petitioners' present counsel to confront Rodriguez with Petitioners' own complaint were met with silence so the record does not contain a response from Rodriguez.

■ We also conclude that the BIA abused its discretion in finding that Peti-

---

3. Rodriguez did not possess the necessary accreditation to file an asylum application on Petitioners' behalf. *See* 8 C.F.R. § 292.1 (authorizing representation in immigration proceedings only by attorneys; law students and recent graduates not admitted to the bar working under appropriate supervision; reputable individuals who provide representation without compensation; representatives of accredited organizations; accredited officials; certain attorneys outside the United States; and amicus curiae).

4. *See In re Valinoti*, 2002 WL 31907316 (Cal. State Bar Ct. Dec. 31, 2002). The decision notes that during the charging period (from mid–1995 to late 1997), Valinoti and his law office handled over 2,720 immigration cases. 2002 WL 31907316, at *2. The state bar court concluded that Valinoti had "intentionally and recklessly failed to competently perform legal services .... result[ing] in substantial harm to many of his clients.... [Valinoti] aided and abetted immigration service providers (1) in representing aliens in immigration cases in violation of federal law and (2) in engaging in the unauthorized practice of law in this state.... [H]e continues to ... seek[ ] relief for his clients based on what could be fraudulent applications for relief." *Id.* at *60–*61. The decision also describes the common practice whereby non-attorney immigration service providers would "hold themselves out as immigration law experts" and *"notarios,"* which has a special connotation in Central and South America, *id.* at *5; file fraudulent asylum applications, *id.* at *7–*8; and then refer their clients to Valinoti shortly before (or even on the same day as) their initial hearings, *id.* at *8–*9. At that point Valinoti would typically recommend that the client withdraw the asylum application and request voluntary departure or suspension of deportation. *Id.* at *9. The decision also censures Valinoti for "relying on or permitting nonattorney immigration services providers to prepare and file applications," in violation of state and federal regulations restricting the representation of clients in immigration proceedings to licensed attorneys and other statutorily qualified individuals. *Id.* at *11–*12.

tioners failed to comply with *Lozada.* That Petitioners provided documentation about both Rodriguez and Valinoti demonstrates substantial compliance with the *Lozada* requirements. *See, e.g., Rodriguez–Lariz,* 282 F.3d at 1227 (holding that Petitioners had substantially complied with *Lozada* by submitting documents regarding a consultant and two attorneys).

■ We conclude, in light of the factual record, that the BIA abused its discretion by denying Petitioners' motion to reopen the in absentia removal order. *See Maravilla Maravilla,* 381 F.3d at 857–59. We therefore grant the petition for review and remand to the BIA with directions to remand to the IJ for consideration of Petitioners' applications for cancellation of removal.

**PETITION GRANTED; REMANDED.**

WAKE, District Judge, dissenting:

This case addresses whether Petitioners' decision to ignore a change-of-hearing notice from an Immigration Court in reliance upon the advice of an immigration consultant, which resulted in the entry of an order of removal *in absentia,* gave rise to an ineffective assistance of counsel claim in a motion to reopen. Petitioners have not made a case of ineffective assistance of counsel or of "exceptional circumstances" that prevented Petitioners from appearing at their deportation hearing.

**I. Facts**

The facts of this case are straightforward. Petitioners' association with Estela Rodriguez, a self-proclaimed "immigration consultant," began in 2000. Rodriguez caused Petitioners to reveal themselves to authorities by filing a Request for Asylum on November 22, 2000, hoping to achieve resident status and a work permit for them by securing cancellation of the resulting order of removal. On May 15, 2001, the Immigration and Naturalization Service ("INS") commenced removal proceedings against Petitioners. Pursuant to the advice of their immigration consultant, Petitioners appeared on November 19, 2001, to request a continuance of removal proceedings to secure counsel, which they received. Yet rather than secure counsel, Petitioners continued to work with Estela Rodriguez, who is not an attorney and never held herself out as an attorney.

In July 2002, Petitioners submitted an incomplete application for cancellation of removal that was prepared by Rodriguez. The Immigration Judge ("IJ") instructed Petitioners to supplement the deficient application at a hearing scheduled for February 18, 2003. Petitioners informed Rodriguez of the IJ's dissatisfaction with the paperwork prepared by her. Rodriguez informed Petitioners that she would prepare all the necessary documents for the next hearing. The immigration consultant next suggested, for the second time, that Petitioners consult an attorney. According to Mr. Lucena's Affidavit, Rodriguez specifically referred Petitioners to James Valinoti, "an attorney that worked with her" who "could make sure that [Petitioners'] cases were properly resolved." Petitioners never contacted the attorney to whom they were referred.

On July 8, 2002, Petitioners received a notice from the Immigration Court that the date of their hearing had been changed from February 18, 2003, to February 3, 2003. The notice provided, in pertinent part:

> Failure to appear at your hearing except for exceptional circumstances may result in one or more of the following actions:
>
> (1) You may be taken into custody by the [INS] and held for further action, OR

(2) Your hearing may be held in your absence under section 240(b)(5) of the Immigration and Nationality Act. An order of removal will be entered against you if the [INS] established by clear, unequivocal and convincing evidence that a) you or your attorney has been provided this notice and b) you are removable.

Following receipt of the notice, Petitioners contacted the immigration consultant to ask whether they needed to attend the hearing on February 3, or whether February 18 remained the operative date. Rodriguez misinformed Petitioners that the date of hearing was February 18. Petitioners relied on Rodriguez's advice and failed to show up at their February 3 hearing. The IJ ordered Petitioners removed *in absentia* for failure to appear at the February 3 hearing.

Petitioners then secured counsel and filed a motion to reopen, alleging that exceptional circumstances beyond their control prevented them from attending the February 3 hearing. The alleged exceptional circumstance was Petitioners' reliance on Rodriguez's advice, which Petitioners characterized as ineffective assistance of counsel. The IJ denied Petitioners' Motion to Reopen, first concluding that Petitioners failed to satisfy the procedural requirements of *Matter of Lozada*, 19 I. & N. Dec. 637, 639 (BIA 1988), *aff'd*, 857 F.2d 10 (1st Cir.1988), and then determining that the facts of the case did not rise to the level of exceptional circumstances. The Board "adopt[ed] and affirm[ed] the decision of the Immigration Judge," and then additionally stated that because Rodriguez, a "non-attorney," never held herself out as an attorney, Petitioners could not reopen based on ineffective assistance of counsel. "Where ... the BIA adopts the IJ's decision while adding its own reasons, we review both decisions." *Kataria v. INS*, 232 F.3d 1107, 1112 (9th Cir.2000).

## II. Statutory Language and the Two Branches of "Exceptional Circumstances"

In this poignant case, the bid for legal status in this county of two undocumented aliens failed due to the bad advice of an immigration services provider who they knew was not licensed to practice law. By this risky strategy Petitioners join the ranks of others who have relied to their detriment upon immigration services providers who are neither licensed nor qualified to provide legal advice to the vulnerable communities upon which they prey.

Congress could have responded to this systemic problem by granting aliens a new hearing whenever their reliance upon an immigration consultant redounds to their harm. But Congress has provided no such remedy to aliens who, like Petitioners, are ordered removed after failing to appear at their own hearing. Instead, the Immigration and Nationality Act provides, in relevant part, that aliens ordered removed *in absentia* may petition to reopen the removal proceedings only by showing that the "failure to appear was because of exceptional circumstances." 8 U.S.C. § 1229a(b)(5)(C)(i). Although the majority defines "exceptional circumstances" to "include circumstances beyond the control of the alien, such as serious illness or death of an immediate relative," Congress has in fact narrowly defined the term as "circumstances (such as battery or extreme cruelty to the alien or any child or parent of the alien, serious illness of the alien, or serious illness or death of the spouse, child, or parent of the alien, *but not including less compelling circumstances*) beyond the control of the alien." 8 U.S.C. § 1229a(e)(1) (emphasis added). The definition does not merely include but is expressly limited to "circumstances ... beyond the control of the alien." Under our

case law, "[t]his court must look to the particularized facts presented in each case in determining whether the petitioner has established exceptional circumstances." *Singh v. INS*, 295 F.3d 1037, 1040 (9th Cir.2002) (citations and internal quotation marks omitted).

We have found a claim of "exceptional circumstances" excusing nonappearance to lie when an alien is deceived into failing to attend his removal proceeding. We have not hesitated to provide such relief when, for example, affirmative deception on the part of an immigration services provider as to the address of record and the existence of a scheduled removal proceeding actually caused the alien's failure to appear. But mere reliance upon the advice of a known non-attorney without objective reason to think it competent, and in disregard of the plain meaning of an official government notice, cannot render an alien's absence from his removal proceeding "beyond his control" within the meaning of 8 U.S.C. § 1229a(e)(1). To hold otherwise does violence to the words of Congress.

We have expanded upon the literal text of the statute to address situations in which the alien's non-appearance is caused by the ineffective assistance of the counsel he has retained. A finding of "exceptional circumstances" is bottomed in these cases upon the constitutional guarantee of due process of law. We so stated in *Reyes v. Ashcroft*, 358 F.3d 592, 596 (9th Cir.2004), where we observed that "[a]lthough the Sixth Amendment's effective counsel right does not attach to deportation proceedings, [aliens] enjoy[ ], in deportation proceedings, a Fifth Amendment due process right to effective assistance of the counsel [they] retained."

In construing the statute to allow reopening for ineffective assistance of counsel, we recognize the reasonableness of the public's reliance upon licensed attorneys. We have made this point explicitly:

> The role of an attorney in the deportation process is especially important. For the alien unfamiliar with the laws of our country, an attorney serves a special role in helping the alien through a complex and completely foreign process. It is therefore reasonable for an alien to trust and rely upon an attorney's advice to such an extent that if an alien fails to show up to a hearing because of an attorney, we can say that this is an exceptional circumstance "beyond the control of the alien." 8 U.S.C. § 1229a(e)(1). Moreover, courts and agencies have a degree of institutional control over attorneys that they do not have over freelance "immigration consultants."

*Monjaraz–Munoz v. INS*, 327 F.3d 892, 897 (9th Cir.2003).

We have extended this principle only in degree by allowing reopening based on the ineffective assistance of a non-attorney who actually holds himself out as an attorney, or as the agent of a licensed attorney. Where the alien actually and reasonably believes that the non-attorney is an attorney or is proffering the work of an attorney, the more generous rule applies for reliance on competence of counsel. The non-attorney's deception as to her status or the source of her work-product entitles the alien to see her work as attorney work. In this case, Petitioners' motion for reopening may not be granted on the basis of ineffective assistance of counsel, for at no point did Rodriguez ever pose as an attorney or claim that she was acting on behalf of a licensed attorney.

### A. Immigration Consultant Advice: the *Singh–Bhathal* Decision

In *Singh–Bhathal v. INS*, 170 F.3d 943 (9th Cir.1999), we squarely held that fail-

ure to appear at a hearing because of the bad advice of an immigration consultant known not to be an attorney is not "beyond the control of the alien" and so is not exceptional circumstances:

> The statute defines exceptional circumstances as those beyond the control of the alien, exemplified by serious illness of the alien or death of an immediate relative of the alien, but not including less compelling circumstances. Singh argues that the advice given him by the immigration consultant not to appear at the hearing constitutes an exceptional circumstance. In no sense, however, did the consultant's advice render Singh's ability to appear at the hearing beyond his control. Singh was informed that he was required to attend the November 30th hearing or be subject to immediate deportation, but he chose to heed the consultant's advice and disregard the written notice provided by the INS.

> Although Singh may have received poor advice, this does not alter the fact that he failed to appear at his hearing, not because of illness, a death in the family, or some similarly severe impediment, but because he took the word of the consultant over that of the INS.

*Id.* at 946–47 (citations and internal quotation marks omitted). Subsequent panels have confirmed that, under *Singh–Bhathal*, exceptional circumstances are not established when an alien fails to appear at his hearing because of his immigration consultant's incorrect advice. *See Monjaraz–Munoz*, 327 F.3d at 897 ("We held that the erroneous advice of an immigration consultant did not constitute an exceptional circumstance requiring reopening of the proceedings.") (citing *Singh–Bhathal*, 170 F.3d at 946).

*Singh–Bhathal* is controlling and requires affirmance of the Board's decision.

### B. Causal Fraud: the *Fajardo* Decision

Deception causing non-attendance is "beyond the control of the alien" and therefore grounds for rehearing. In the leading case of *Fajardo v. INS*, 300 F.3d 1018 (9th Cir.2002), the alien's "immigration paralegal" provided the paralegal's address to the IJ as the address of record—rather than Fajardo's address—and then failed to inform Fajardo about her upcoming hearing date, despite Fajardo's periodic requests for status updates. *Id.* at 1018–19. The paralegal also falsely informed Fajardo that he would direct any legal questions to an immigration attorney. *Id.* at 1021. Under these facts, we held that the 180–day limitation for filing a motion to reopen would be equitably tolled. *Id.* at 1022. In dictum we volunteered that such fraud rises to the level of an "exceptional circumstance" justifying relief from an order of removal rendered *in absentia*. *Id.* at 1022 n. 8.

The *Fajardo* court did not conflate this type of "exceptional circumstance" with ineffective assistance of counsel from conduct of a non-attorney who actually held himself out as an attorney, or as an agent of an attorney. After surveying our case law, the *Fajardo* court noted that ineffective assistance of a non-attorney fairly thought to be an attorney or an attorney's agent constitutes a "second, independent ground for re-opening [removal] proceedings," subject to the heightened procedural requirements of *Lozada* and sounding not in equity but rather in "the fifth amendment guarantee of due process." *Id.* (citing *Varela v. INS*, 204 F.3d 1237, 1240 n. 6 (9th Cir.2000)); *see Lopez v. INS*, 184 F.3d 1097, 1100–01 (9th Cir.1999) (tolling the limitations period for motions to reopen to remedy causal fraud on the part of a notary public, and noting that although "Lopez's claim for ineffective assistance of

counsel appears to have merit[,]" disposition of the case on other grounds meant that "we need not address [it]."); *Rodriguez–Lariz v. INS*, 282 F.3d 1218, 1224, 1227 (9th Cir.2002) (deportation proceedings reopened to remedy causal fraud perpetrated by an "immigration specialist" as well as the ineffective assistance of such non-attorney, who held himself out as the agent of a licensed attorney); *see Iturribarria v. INS*, 321 F.3d 889, 899 (9th Cir.2003) (classifying ineffective assistance of counsel as an "alternate ground" for granting a motion to reopen).

## III. Application of "Exceptional Circumstances" Precedents to this Case: *Singh–Bhathal,* Not *Fajardo* Controls

As the foregoing discussion makes clear, *Fajardo* involved facts and issues different in all material respects from those presented here. The majority's reliance on *Fajardo* is unfounded for two distinct reasons.

### A. The Absence of Fraud

First, *Fajardo's* dictum, to which I take no exception, is not applicable to the facts of this case. *Fajardo* says that a removal proceeding may be reopened when an immigration services provider defrauds the petitioner into failing to attend his own hearing. Immigration consultant Rodriguez did not fraudulently or deceptively cause Petitioners's non-attendance at their removal hearing. Petitioners received actual notice of their new hearing date, yet chose to ignore it after conferring with their immigration consultant. This is exactly what occurred in *Singh–Bhathal.*

Moreover, Rodriguez did not otherwise promise—as did the paralegal in *Fajardo*—to direct any legal questions to an immigration attorney. Quite the opposite: Rodriguez twice referred Petitioners to an immigration attorney, now disgraced, whom they twice chose not to consult.

Notwithstanding these facts, the majority identifies five instances of supposed deceptive behavior by Rodriguez that it believes suffice to bring this case within *Fajardo:* (1) Rodriguez's statement that she could obtain work permits and legal resident status for Petitioners, and Petitioners' detrimental reliance upon such statements for over three years; (2) Rodriguez's unilateral decision to file a political asylum application for the purpose of "getting [their] cases into court," although she did not possess the necessary accreditation to file such an application even if it were authorized; (3) Rodriguez's supposed statements that Valinoti "worked with her" and that he would "make sure [their] cases were properly resolved;" (4) Rodriguez's advice that Petitioners ignore the change of hearing notice; and (5) Rodriguez's apparent association with Valinoti, who was suspended by the California State Bar Court for facilitating the unauthorized practice of law and other violations of state and federal rules of professional responsibility.

The first two examples of alleged fraud go to Rodriguez's unreasonable warranty of a successful outcome, and the illicit means she used to achieve the promised results. But neither an earlier general assurance of a favorable outcome nor an earlier specific decision to file a political asylum application, even if not authorized, had anything to do with misleading Petitioners into thinking the hearing was not on February 3 when the official notice said it was. Relief is warranted only when the particularized facts demonstrate that the alien's *failure to appear* was actually caused by exceptional circumstances "beyond his control." 8 U.S.C. § 1229a(e)(1).

The majority's third instance of supposed fraud fairly recites the record but

then turns it on its head. Rodriguez twice advised Petitioners to obtain counsel—thus dispelling any reasonable inference that relying on her alone was just as good as following her advice to get an attorney. On November 19, 2001, Petitioners requested a continuance of removal proceedings to secure counsel at Rodriguez's specific instruction. In July 2002, Rodriguez advised Petitioners to consult lawyer Valinoti after Petitioners informed her of the IJ's dissatisfaction with the application for cancellation of removal that she prepared. That second rendition of advice was to consult with attorney Valinoti to "make sure [their] cases were properly resolved." The majority stretches the ambiguity that is latent in Mr. Lucena's Affidavit beyond its fair import when it interprets this to mean that Valinoti would "make sure [their] cases were properly resolved" *through Rodriguez.*

The majority's fourth instance of supposed deception is "Rodriguez's subsequent advice when she informed them that they should not attend the February 3 hearing." But of course whether the bad advice is fraud is the ultimate conclusion that Petitioners must prove, so to give the conclusion as the reason for the conclusion is circular reasoning. As *Singh–Bhathal* makes clear, following bad advice with full knowledge is not fraud, which requires at least the "knowing misrepresentation of the truth or concealment of material fact to induce another to act to his or her detriment." Black's Law Dictionary 685 (8th ed.2004).

The majority's final specification of fraud, Rodriguez's "apparent association" with Mr. Valinoti's law practice, similarly has no force. Petitioners never contacted Mr. Valinoti for legal advice. This fact deprives Mr. Valinoti's exploitative business practices of significance for whether Petitioners failed to appear for reasons of deception rather than unwarranted trust. There can be no guilt by non-association.

Furthermore, Rodriguez never held herself out as being formally associated with Mr. Valinoti, unlike the immigration services provider in *Varela* who "represented to [the alien] that he was an assistant to ... the lawyer," or the immigration specialist in *Rodriguez–Lariz,* who affirmatively represented that he was "coordinating legal services" with licensed attorneys, and in fact introduced the alien to these supposed principals immediately before immigration proceedings commenced. *Varela,* 204 F.3d at 1240; *Rodriguez–Lariz,* 282 F.3d at 1222.

Whether viewed individually or as a whole, the five instances of supposedly deceptive conduct identified by the majority do not amount to deception that caused Petitioners not to attend their hearing.

## B. Ineffective Assistance of an Adviser Not Thought To Be an Attorney or Working Under an Attorney

Even assuming that Rodriguez's actions, which did not cause Petitioners by any deception to miss their hearing, were fraudulent in some penumbral sense heretofore unknown to our cases, that still would not substitute, for ineffective assistance of counsel purposes, for the actual and reasonable belief that the provider is an attorney or working under an attorney. The majority concludes, in light of *Albillo–De Leon v. Gonzales,* 410 F.3d 1090 (9th Cir.2005), *Varela, Lopez, Fajardo* and *Rodriguez–Lariz,* "that Rodriguez did not hold herself out as an attorney does not categorically preclude Petitioners from basing their motion to reopen on Rodriguez's ineffective assistance." Those cases at most suggest that actual fraud by an immigration services provider can be an "exceptional circumstance" justifying re-

opening when it actually prevents the alien from attending. Those cases do not say that fraud by a non-attorney can be transmuted into "advice of counsel" in the absence of a misrepresentation by the immigration consultant leading the alien to think the consultant is a lawyer or is acting under a lawyer.

In so construing our cases, the majority collapses the difference between *Varela, Lopez,* and *Fajardo,* concerning general equitable remedies for fraud directly causing non-attendance, and cases such as *Albillo–De Leon* and *Rodriguez–Lariz,* concerning ineffective assistance of counsel. The majority mixes and matching pieces of both doctrines and reaches a result justified by neither.

## IV. Conclusion

*Singh–Bhathal* controls this case and *Fajardo* gives no way around it. I would therefore affirm the decision of the Board of Immigration Appeals.